LILLY CAMPBELL, *Appellee*, v. CHASE BROWN, *Appellant*.

No. 16,244.

SYLLABUS BY THE COURT.

1. EVIDENCE—*Hearsay*. A person having in his possession at his home a bottle of wood alcohol, obtained the previous day, invited a neighbor to drink with him from its contents, supposing it to be fit to drink, and, to induce compliance with his invitation, said: "It is good; I got it of Chase Brown." Two days afterward, having taken several drinks of the alcohol meantime, the person died, and the evidence tends to show that death resulted from wood-alcohol poisoning. In an action by his administratrix for damages, based upon the alleged negligence of Brown in selling the wood alcohol without a proper label, it is *held*, that the admission in evidence of this statement of the deceased was error, and that under the issues and evidence it was prejudicial.

2. ———— *Narrative of a Completed Transaction.* The words quoted were not a spontaneous exclamation; they were not concomitant with the principal act (of obtaining the alcohol), nor a part of it; and they did not illustrate, explain or characterize the act, but simply related the purchase as a past event—a narrative of a completed transaction.

Appeal from Neosho district court; JAMES W. FINLEY, judge. Opinion filed January 8, 1910. Reversed.

*A. S. Lapham*, and *S. W. Brewster*, for the appellant.

*F. J. Oyler*, *H. P. Farrelly*, and *T. R. Evans*, for the appellee.

Campbell v. Brown.

The opinion of the court was delivered by

BENSON, J.: This action was brought by Mrs. Campbell, as administratrix of the estate of her deceased husband, for damages for the alleged negligence of the defendant in selling and delivering wood alcohol, instead of grain alcohol, the article called for, and in failing to label the bottle to indicate its poisonous contents. The plaintiff having recovered, the defendant appeals, alleging error in the admission of testimony and in giving and refusing instructions.

On the 22d day of February, 1907, Chase Brown, a druggist, sold to David L. Campbell a quart of alcohol, for use in compounding a liniment for a lame horse. At different times the next day Mr. Campbell drank from the contents of a quart bottle that he had brought to his home on the 22d. He became sick on the 24th and died on the 25th of that month. The bottle from which he drank was not labeled "poison." An analysis of the remaining contents of the bottle disclosed that it was wood alcohol, which is a poison. An analysis of the stomach of the deceased also disclosed the presence of this poison, and the symptoms of his sickness indicated such poisoning. The defendant testified that he sold to Mr. Campbell common alcohol, i. e., grain alcohol, and not wood alcohol; that while he had wood alcohol in his stock it was of a dark shade, bordering on red, having been colored by the barrel in which it was kept. A clerk also testified that the only wood alcohol in the store was so colored, and customers of the defendant testified that they had purchased of him wood alcohol of this color. The liquid from which Mr. Campbell drank was clear and colorless. It was in a "Harper's Rye" whisky bottle, which was covered with wire, and the defendant kept that brand of whisky for sale in such bottles. When Campbell was on his way to his home in the country, on the 22d day of February, he had a quart bottle of liquid of some kind, and also a

31—81 KAN.

half-pint bottle of whisky. It does not appear, how-
ever, that the whisky was of this "Harper's Rye"
brand, and the evidence does not show where he ob-
tained it.

A witness for the plaintiff, who, with the deceased,
drank some of the contents of the bottle of wood al-
cohol, testified to a conversation with Campbell, as fol-
lows:

"Ques. You may tell the jury whether or not Mr.
Campbell had any liquid there in a bottle, and, if so,
describe the bottle. Ans. Well, sir, I stopped there to
take him to the sale, and he wanted me to go with
him, then, and Mr. Fredericson, and he says: 'Come
in and take a drink.' I says: 'What have you got to
drink?' He says: 'I have got some alcohol.' He says:
'It is good.' I says: 'Davy, I never drink alcohol.' He
says: 'It is good; I got it of Chase Brown, and it is
good,' and coaxed me to take a drink."

The testimony, it will be seen, was not responsive to
the question, and a motion was made to strike it out,
for the reason, among others, that it was hearsay.
After argument the motion was denied. The court
said: "I think, as part of the *res gestæ*, it is competent;
it relates to one of the principal facts."

This conversation was at Mr. Campbell's house, on
the next day after the purchase at Brown's drug
store. The principal, if not the only, importance of
this testimony was to prove that the wood alcohol
was procured from the defendant, and this was a
vital issue to be determined. The defendant de-
nied selling or delivering that article, and in this
he was to some extent corroborated by the ·evidence
tending to show that the wood alcohol in his stock
was colored, while this was clear. It is true that it
had been shown that the defendant had sold to Mr.
Campbell a quart of alcohol the day before, and that
he kept in stock, for sale, whisky in bottles like the one
containing this poison; but it was necessary in order
to return a verdict for the plaintiff that the jury should

find, not only that the defendant had sold alcohol, but that he had sold this wood alcohol to Mr. Campbell.   If the statement of Campbell, so related by the witness, "I got it of Chase Brown," was properly admitted, and was believed, it proved the fact.   The term *res gestæ* is often used in ruling upon the admission of testimony, but not always with careful discrimination.   In note 5 to Chase's edition of Stephen's Digest of the Law of Evidence it is said that it came into use as a term of "convenient obscurity."  (Page 250.)   Professor Wigmore says that the phrase *res gestæ* is inexact and indefinite in its scope and is ambiguous in its suggestion of reasons for the doctrine.   That author prefers the term "spontaneous exclamations" as indicating the application of the rule to one class of cases, and "verbal acts" to another class.   These designations have the merit of suggesting reasons for the doctrine.   The first he refers to as genuine exceptions to the rule excluding hearsay evidence, and says: ·

"This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock."  (3 Wig. Ev. § 1747.)

The principle upon which utterances constituting the verbal part of an act are admitted, the writer declares, does not rest upon an exception to the hearsay rule, but upon the ground that the rule itself does not apply. Where words are treated as part of an act he thus refers to the application of the principle:

"A second kind of situation in which utterances are not offered testimonially arises when the utterance *accompanies conduct to which it is desired to attach some legal effect.*  The conduct or act has intrinsically no definite significance, or only an ambiguous one, and its whole legal purport or tenor is to be more precisely ascertained by considering the words accompanying it.

The utterance thus enters merely as a verbal part of the act, or, in the common phrase, a 'verbal act.' " (3 Wig. Ev. § 1772.)

"The utterance serves merely to assist in completing and giving legal significance to the conduct. Hence it is not needed when the conduct is already complete and definite in itself. The conduct must be *equivocal* or incomplete as a legal act before the utterances can be admissible." (3 Wig. Ev. § 1774.)

The following quotations will serve to show how the doctrine commonly referred to as *res gestæ* or part of the *res gestæ* is understood and applied:

"When declarations or acts accompany the fact in controversy and tend to illustrate or explain it, they are treated, not as hearsay, but as original evidence; in other words, as part of the *res gestæ*." (Jones, Ev., 2d ed., § 344.)

"The *res gestæ* may be therefore defined as those circumstances which are the undesigned incidents of a particular litigated act, and which are admissible when illustrative of such act. . . . Incidents that are thus immediately and unconsciously associated with an act, whether such incidents are doings or declarations, become in this way evidence of the character of the act." (1 Whart. Law of Ev. § 259.)

"Where declarations offered in evidence are merely narrative of a past occurrence they can not be received as proof of the existence of such occurrence. They must be concomitant with the principal act, and so connected with it as to be regarded as the mere result and consequence of the coexisting motives." (1 Green. Ev., 16th ed., § 110.)

"Declarations to be admissible as part of the *res gestæ* must be contemporaneous with some principal fact which they serve to qualify or explain." (*The State v. Montgomery*, 8 Kan. 351, syllabus.)

The declaration must be so close in point of time to the event or transaction of which it speaks and of so spontaneous and irreflective a character that it may be regarded as a part of it. (Note to *Louisville R. Co. v. Johnson*, [Ky. 1909] in 20 L. R. A., n. s., 133; *United*

*States v. King,* 34 Fed. 302, 314; *Railway Co. v. Logan,* 65 Kan. 748.)

Applying the principles announced in the authorities already cited, it is apparent that the testimony of the witness that Campbell had told him that he bought the alcohol of Brown was erroneously admitted. The words were in no sense a spontaneous exclamation; they were not concomitant with the principal act or event, or a necessary part of it; they did not illustrate, explain or characterize the act, but simply related the purchase as a past event. This was a mere narrative of a completed transaction, and was clearly inadmissible. (*The State v. Pomeroy,* 25 Kan. 349; *Tennis v. Rapid Transit Rly. Co.,* 45 Kan. 503; *Johnson v. McLain,* 79 Kan. 423.)

It is argued, however, that the error is immaterial, because the evidence was sufficient to prove that the wood alcohol was obtained from the defendant even if this testimony were eliminated. The state of the evidence bearing upon that question we have already given. What the jury would have found to be the fact in the absence of this objectionable testimony can not be known. It was offered to prove a vital fact, sharply in issue, necessary to sustain the plaintiff's case. We can not say that if this testimony had not been admitted the verdict would have been the same. The error, therefore, affected the substantial rights of the defendant, and can not be disregarded. (*The State v. Montgomery,* 8 Kan. 351; *Myers v. Knabe,* 51 Kan. 720.)

The defendant also complains of the refusal of the court to instruct the jury that if the deceased obtained the alcohol upon a statement that it was to be used as a liniment, but intended at the time to use it as a beverage, and did so use it, then there could be no recovery. This proposition was presented in various forms, but was rejected, and we think properly.

Complaint is also made of an instruction stating the duty of a druggist in selling a poisonous substance

properly to label the bottle containing it, as required by section 2261 of the General Statutes of 1901. The neglect of this requirement was within the issues presented by the petition, and the terms of the statute were properly stated to the jury. The statute does not except from its operations sales of poison to be used externally, whether upon animal or man.

Complaint is also made because a copy of the application required by the prohibitory law was not attached to the petition. It was not necessary that it should be. The action was not upon a written instrument. It was properly put in evidence, but was not a necessary part of the pleadings.

No error is found in the proceedings except in the admission of the testimony referred to. For that error the judgment is reversed, and the cause remanded for a new trial.