CORA VAN VRANKIN, *Appellee, v.* THE KANSAS CITY ELEVATED RAILWAY COMPANY, *Appellant.*

No. 16,897.

SYLLABUS BY THE COURT.

1. PERSONAL INJURIES—*Damages—Amount of Award—Quotient Verdict.* In an action by a woman twenty-three years of age for damages caused by being violently thrown from a street car, the testimony showing that as a result of the injury she was taken to a hospital, where she remained three weeks and where an operation was performed removing one ovary and resecting the other, and that she was rendered weak and nervous and unable to follow her former occupation and earn her former wages, a verdict for $10,933, while large, is not so excessive as to show passion and prejudice, nor does it show upon its face that it was the result of addition and division.

2. ——— *Contributory Negligence—Instructions—Applicability to the Issues.* Where the plaintiff sues upon the allegation and theory that she was violently thrown from a street car by a sudden jerk before it had come to a full stop, the street-railway company not having pleaded contributory negligence, and asserting and trying the case upon the theory that the plaintiff's injury occurred by a fall after she had safely left the car, *held,* that the failure of the court in its instructions to direct the attention of the jury to the plaintiff's con-

tributory negligence in attempting to alight while the car was in motion does not constitute reversible error.

3. ―――― *Instructions—Enlargement of the Issues—Immaterial Error.* The day following the injury, while the plaintiff was suffering therefrom, an agent of the railway company procured from her a statement which she could not sign by reason of her injury, but which she directed a friend to sign, such statement being to the effect that the car suddenly started after it had come to a stop. After leaving the hospital she filed her original petition, containing a similar allegation. Some weeks thereafter, a deposition of the motorman having been taken, she filed an amended petition alleging that the injury occurred by reason of a sudden jerk while the car was being brought to a stop. In one of the instructions the attention of the jury was called to the duty of the railway company in respect to a sudden start after a full stop, and also to its duty in respect to bringing the car to a stop and keeping its gates open in the meantime. *Held,* that in view of the answer, and the theory on which the case was tried by the street-railway company, such reference to the sudden starting of the car does not constitute reversible error.

4. ―――― *Injury to Passenger Alighting from a Street Car— Negligence—Evidence and Verdict.* Where the plaintiff and two witnesses testify substantially that the injury was caused by a sudden jerk before the car had been brought to a full stop, and former motormen experienced in the operation of the same kind of a car testify that such jerk might occur, and would occur unless the car was properly equipped and operated, *held,* that the liability of the street-car company is sufficiently shown to uphold the verdict.

Appeal from Wyandotte court of common pleas. Opinion filed March 11, 1911. Affirmed.

*O. L. Miller,* and *C. A. Miller,* for the appellant; *Samuel Maher,* of counsel.

*C. Angevine, J. K. Cubbison,* and *William G. Holt,* for the appellee.

The opinion of the court was delivered by

WEST, J.: The appellee alleged that on January 24, 1909, in attempting to alight from one of appellant's cars, she was injured by being thrown· therefrom, in

consequence of the car being negligently brought to a sudden stop. She was about twenty-three years of age; was earning eight dollars a week as stenographer, and never had treatment from a doctor for anything, nor had anything the matter with her that she knew of before the accident. Soon after the accident she was taken to a hospital, where a median-line incision was made in the abdomen, the right ovary and the appendix were removed, and the left ovary was resected, *i. e.*, a piece removed and a piece left. A hemorrhage in the right ovary was discovered, the appendix was slightly congested, and the left ovary was encysted. She was at the hospital three weeks; had pain and suffering after the operation; and testified that she had been in a very nervous state and unable to work except a short time—that she would then break down. She testified that she could not stand being on her feet any length of time; that she suffered a great deal across her abdomen and was compelled almost every week to go to bed a day or two; was continually in a nervous state; had always to be careful in getting home ahead of the crowd on the car, so that she could get a seat; would faint if she stood up; that she was unwell every other week, each period accompanied by pain; had not been able to work except a short time, then she would break down; that she had tried bookkeeping and broke down under the nervous strain and had to go to the country; that she is now receiving five dollars a week and board and room for taking care of a little boy in a private family. The surgeon testified, among other things, that a cystic condition of the ovaries occurs frequently without any accident, and that he would not attribute it in this case to the accident, but that the hemorrhage seldom follows anything except some force or violence. The jury returned a verdict for $10,933. The railway company appeals, and claims that its liability was not established by the evidence; that the verdict was ex-

19—84 KAN.

cessive; that the instructions were erroneous, in that those numbered 7 and 10 invaded the province of the jury, and departed from the theory of the amended petition.

The case was tried by the appellant on the theory that the appellee was not injured in alighting from the car, but, if at all, by falling, some distance from the place of alighting. But there was sufficient evidence to show that the appellee's theory was correct, and the jury were amply justified in so finding. While the answer was only a general denial, the appellant claims that even on the testimony in behalf of the appellee she contributed to the injury by her own negligence, or at least that such evidence left the matter in such condition that the jury should have considered it, and that instruction No. 7 practically precluded such consideration. This instruction was that if, when the plaintiff "reached a point near her destination, she signalled to the conductor to stop such car at Eleventh street, where she desired to alight, and that the conductor gave the usual signal to the motorman to stop said car, and thereupon the speed of said car was reduced, and when near said Eleventh street, and before said car had come to a full stop, the gates of said car were opened by the said motorman, and the plaintiff proceeded to the rear platform, and stepped one foot upon the step of said car for the purpose of alighting therefrom, and that at the time the plaintiff had arrived at the step of said car the motorman in charge thereof brought such car to a sudden and violent stop, thereby causing the plaintiff to be thrown with great force and violence to the street, causing the injuries complained of, then the defendant will be liable and your verdict must be for the plaintiff."

Counsel for the appellant argue that this disposes of the question of contributory negligence adversely to the railway company, for the reason that it tells the

Van Vrankin v. Railway Co.

jury they must find for the plaintiff if the sudden stop threw her violently to the street and injured her, notwithstanding the fact that she had begun to alight and had placed one foot upon the step while the car was in motion, and that this fact should have been submitted to the jury, so that they, and not the court, might say whether such attempt to alight from a moving car constituted contributory negligence. While this instruction, if taken alone, might be obnoxious to some criticism, still it was given in a case in which the defense consisted in the claim that no injury at all had occurred until the plaintiff was safely away from the car, and to her petition on which this instruction was based no plea of contributory negligence had been interposed. The ninth instruction plainly told the jury that it was the duty of the plaintiff to exercise ordinary care and prudence to avoid being injured, that it was her duty to remain on the car until it had stopped, and that if she attempted to alight while it was in motion or assumed a dangerous position knowing that the car had not been brought to a stop and was liable to jerk or lurch under the ordinary methods of stopping, and by such negligence she was injured, without any fault or negligence upon the part of the defendant, she could not recover. The clause "without any fault or negligence upon the part of the defendant" is severely criticized by the appellant as equivalent to an instruction that the negligence of the plaintiff would not defeat her recovery unless the accident was caused solely by her conduct, and without any fault or negligence of the defendant. Of course this expression should not have been used, and had the pleadings and the theory of the defense been different its use might compel a reversal. But it seems to have escaped observation, doubtless for the very reason that the matter of the plaintiff's contributory negligence was not much considered in the trial of the real question—whether the

alleged injury had or had not occurred in fact. It is true, as decided in *Burns v. Railway Co.,* 66 Kan. 188, and cases there cited, that a defendant may avail itself of contributory negligence if shown by the plaintiff's own testimony, for the reason that the law does permit a plaintiff to recover from another for injuries attributable to the fault of the plaintiff himself, whether such fault be shown by the plaintiff or by the defendant. But this defense can doubtless be waived, either expressly or impliedly, by stipulation or by conduct; and the record indicates so clearly that the appellant, in the effort to dispute the alleged accident and to refer the alleged injury to a subsequent occurrence after the appellee had left the car, so practically or so nearly waived the matter of contributory negligence respecting the alleged fall from the car that the error in the use of the expression referred to is not material. Counsel for the appellant in their brief say:

"The defendant denied that the plaintiff received any injury whilst on or in getting off the car, or in consequence of any movement of the car, and contended that she fell upon the street after she had safely alighted and had taken two or three steps from the car."

And in the reply brief:

"The defendant relied from first to last for its defense upon the proposition that it was guiltless of the act charged against it, namely, the sudden stopping of the car with a violent jerk which threw the plaintiff to the street."

That the verdict was large is beyond dispute. That it was so excessive as to show passion and prejudice the appellant does not claim, and we are referred to no authorities for so holding. It is hard to measure the injury, and still harder to estimate it in dollars and cents, and in the absence of any showing of misconduct indicating passion or prejudice we must leave the matter as determined by the jury, who saw the appellee

Van Vrankin v. Railway Co.

and heard her testify. (13 Cyc. 121; *M. K. & T. Rld. Co. v. Weaver,* 16 Kan. 456; *Reading Township v. Telfer,* 57 Kan. 798; *James v. Hayes,* 63 Kan. 133; *Chanute v. Higgins,* 65 Kan. 680; *Railway Co. v. Frazier,* 66 Kan. 422; *Railway Co. v. Sledge,* 68 Kan. 321.)

Complaint is made concerning the tenth instruction for its alleged assumption of the theory of the petition instead of the amended petition, and for its alleged enumeration of particulars declared to be negligent as a matter of law. The original petition charged that the car came to a full stop at Eleventh street, but was running so rapidly that it went a few feet past the usual stopping place; that when the car stopped the gates were opened and the appellee started to alight, and while upon the second step, in the act of alighting, the car suddenly started forward, thus causing the injury; that the appellant's employees knew or should have known that the appellee was not given sufficient time to alight, and that they recklessly started the car suddenly, with great force. The amended petition alleged that as it approached Eleventh street the car slowed down and the appellee went to the rear platform to alight; that the gates were improperly opened, and as the plaintiff had her foot on the first step, preparing to alight, the motorman negligently brought the car to a sudden stop, thereby injuring the appellee; that the appellant's employees knew the night was dark and that the gates should not be opened before a full stop, and that they knew or should have known that the appellee had one foot upon the upper step, preparatory to alighting, when they brought the car to a sudden stop. In the tenth instruction the jury were told that it was the appellant's duty under the circumstances "to stop such car for the purpose of allowing the plaintiff to alight therefrom, and not to open the gates thereon until such car had been brought to a full stop, and to keep it still for a sufficient time for the

plaintiff to alight therefrom in safety, and not to start it forward suddenly while she was in the act of alighting. It was the duty of the agents and servants of the defendant in charge of such car to look and see and know that the gates of such car were not opened until such car was brought to a full stop, or, if such gates had been opened before such car was stopped, then to see that such car was not caused to give any sudden or violent jerk, so as to endanger the safety of any passenger while such passenger was in the act of alighting after such gates had been opened, or allowing the car to move, if it had been stopped, before any passenger desiring to alight had an opportunity to do so. If they failed in these duties, or any of them, and the plaintiff was thereby injured, without fault on her part, the defendant was guilty of negligence and is liable for such injury."

It was shown by the testimony of former motormen on similar cars that it was not only the duty but the rule of the railway company to come to a full stop before opening the gates, and certainly it must be its duty, if the gates have been opened, to see that no sudden or violent jerk be given so as to endanger a passenger in the act of alighting. While the reference to a sudden starting forward was unnecessary and improper in view of the amended petition, still it was rendered harmless by the further expression that if the employees failed in *any of their duties,* and the plaintiff was *thereby* injured, the company would be liable.

Miss Gladys Lichty testified:

"Ans. When we left Tenth street Miss Van Vrankin raised her hand to the conductor for him to give the signal for the car to stop at Eleventh, and he gave it, and she got up and walked in the back of the car, and the gates were opened before the car stopped, and the car began to slow down when we were almost to Eleventh street; and when the car was almost to a stop, why, it gave a violent jerk.

"A. Well, I don't know, except that it just gave a violent jerk; it made for the people inside of the car hard to sit on their seats."

Miss Fay Lichty testified that the gates were opened before the car came to a stop. She further said: "It seemed to me as though the car had come to a stop, when they gave a violent jerk, and, of course, it threw her, and it seemed as though it threw almost every one in the car out of their seats," and that the car did not stop, start up again and make a second stop.

The appellee testified:

"The car was then slowing down, and as I stepped out on the platform—it was n't a second—the car gave a sudden jerk, like that, and I threw out my arm to catch myself, but I was too slow, and I was on the ground and the conductor picked me up and began to ask me if I was badly injured and what my name was."

We do not think, therefore, that instruction No. 10 was materially misleading or prejudicial to the appellant.

The day after the injury an agent of the appellant procured a statement of the affair from the appellee, who directed a friend to sign it for her, as her right shoulder had just been "thrown into place" and her right arm was "all bandaged up" and she was nearly wild with her "arm being put in place." After she left the hospital she talked to her attorney. In this statement to the agent the injury is said to have occurred after the car had stopped and she had started to get off; that before she reached the lower step the car suddenly started forward and threw her off. It is seriously insisted that the change of front shown by the amended petition was not in good faith and was not made until certain depositions had been taken which admonished the appellee that in order to recover she must allege that a sudden stop, and not a sudden start, threw her from the car. However the injury in fact occurred, it was at night, and made the appellee so sick, as she tes-

tified, that she could not walk except in the middle of the road, and rendered her "frantic with pain"; and the next day, with her shoulder and arm suffering from sprain, it is not passing strange that she may have been mistaken in her statement as to just how the trouble started. Less strange is it if, after her hospital experience, she was still unable correctly to give her counsel the details of the occurrence which caused the injury. The difference between a sudden start and a sudden stop of the car is not so serious as to justify an imputation of bad faith because the injured person did not for a while correctly distinguish between them. The contention that such a thing as the sudden stop alleged in the amended petition is absurd if not impossible is met by the testimony of a former motorman, on the same kind of car, Mr. Wickstrom, who said:

"Sometimes a brake shoe will hang close to a wheel if the brake is not adjusted right, the shoe fits the edges of the wheel just right, it will jar and jerk when you stop the car; if the shoe is connected up like they should be you can stop the car easy without any jarring or jerk."

Mr. Quisberry, who had served for four years as conductor and four years as motorman for the appellant's road, and was acquainted with the "700" cars, such as the one under consideration, testified:

"Ques. Is there a jerking of the car sometimes when it is brought to a stop? [Objected to by defendant as incompetent, irrelevant and immaterial. Objection overruled; defendant excepts.] Ans. Sometimes they will unless you release the brake.

"Q. What caused that jerking, tell the jury? A. Well, it is the tightening of the brakes and the releasing of the brakes when it comes to a stop; you should release the brake just about the time it comes to a stop to stop that jerking; if you do not, if your brake is set when the car stops, and you don't release them, then comes a jerk, you see."

Some reference is made to a "quotient verdict," and it is suggested that the verdict bears facial evidence of having been reached by an arithmetical process. The record contains no evidence on this point, and the face of the verdict is not sufficiently forbidding to impeach its character. The cause has been presented with thoroughness and ability, and we have endeavored to give patient and careful heed to each complaint made by the appellant, but we do not find from the entire record any material or substantial error.

The judgment is affirmed.