LILLY CAMPBELL, *Appellee*, V. CHASE W. BROWN, *Appellant*.

No. 17,217.

SYLLABUS BY THE COURT.

1. EVIDENCE—*Chemical Analysis—Statement to Chemist—Hearsay and Incompetent*. In an action by a widow to recover damages for the death of her husband caused by the alleged negligent sale by a druggist to him of wood alcohol, which he mistook for grain alcohol and drank, causing his death, the stomach of the deceased and a sample of the liquid were sent for examination and analysis to witnesses who were permitted to testify as to statements made by the persons delivering such stomach and sample as to whence they came. *Held*, hearsay and incompetent. But as other and competent evidence sufficiently showed their identity and unchanged condition, such hearsay was not materially prejudicial.

2. ———— *Jury are Judges of Credibility of Witnesses*. The jury found that the deceased purchased or had no other liquor on the occasion in question, which finding was contrary to the undisputed evidence of the only witness who testified on this point. *Held*, that the court did not err in refusing to set aside such finding, for the reason that the jury were the judges of the credibility of such witness and were not required to believe him.

3. NEGLIGENCE—*Druggist Selling Unlabeled Poisons*. It was immaterial whether or not the deceased applied for alcohol for use as a medicine intending to use it as a beverage, as this, if true, would be no justification or defense for selling wood alcohol unlabeled.

4. ——— The pharmacy act (Gen. Stat. 1909, §§ 8095-8112) does not by legislative construction or repeal of section 260 of the crimes act (Gen. Stat. 1909, § 2763) render it lawful for one, whether a registered pharmacist or not, to sell wood alcohol without labeling it as a poison.

5. VERDICT—*Not a "Quotient" Verdict.* When instead of discussing the merits of the case each of the jurors marks down the amount he thinks the plaintiff should recover, and the amounts are added and the sum divided by twelve, and an amount materially less than the quotient is thereafter unanimously agreed upon and returned, *held,* that while such procedure is not to be commended, the verdict finally agreed upon is not shown to be a quotient verdict requiring its setting aside.

Appeal from Neosho district court. Opinion filed October 7, 1911. Affirmed.

*John J. Jones,* and *James W. Reid,* for the appellant.

*F. J. Oyler, H. P. Farrelly,* and *T. R. Evans,* for the appellee.

The opinion of the court was delivered by

WEST, J.: Lilly Campbell, widow of David L. Campbell, sued Chase W. Brown to recover damages for the death of her husband, alleged to have been caused by the negligent sale to him of wood alcohol which it is alleged he mistook and drank for grain alcohol. She recovered a judgment and the defendant appeals, assigning as errors the admission of testimony, refusal to submit certain questions to the jury, the giving and refusing of instructions, and the denial of a new trial.

Certain witnesses were permitted to state that when receiving the stomach and liquid for examination they were informed by the persons delivering the same as to whence they had been taken. This was pure hearsay and entirely incompetent (*Campbell v. Brown,* 81 Kan. 480, 106 Pac. 37), but as other and competent evidence sufficiently established that the stomach was that of the deceased, and had remained in the condition it was

Campbell v. Brown.

in when removed, the hearsay in reference thereto was not materially prejudicial. As to the liquid, the same should be said but for one thing which requires notice. The testimony showed that the bottle contained but a short quart at first, and Mrs. Campbell testified that her husband brought it home Friday evening, and next morning he took out enough to make a drink diluted with water, then poured out some in a bottle and diluted it with water to take with him; that the bottle into which this was poured was nearly half full and she thought it was a pint bottle; that that evening he took another drink; that on the first morning drinks were taken out for two others; that Sunday morning he took another drink. She also testified that Saturday evening he used over one half of the bottle for mixing a liniment for use on a horse. This was evidently before some of the drinks had been taken from the bottle. The county attorney and a physician respectively testified that shortly after the death of Campbell the bottle was "half or little more, possibly two-thirds, full," "something like two-thirds full."

It is argued that if all this testimony be substantially correct the bottle must have been tampered with after its numerous depletions and before the sample was taken for analysis, and that therefore such sample was improperly used as evidence. The testimony is none too satisfactory, but as it consists merely of estimates, no one pretending to have measured the variously considered contents, taking it together with all the other evidence and circumstances we find no just cause for suspicion that the contents of the bottle had been surreptitiously increased but must conclude that the jury were warranted in believing the sample analyzed to be genuine. In other words, the various statements and estimates concerning the contents of the bottle were proper for consideration, and, realizing the inevitable inaccuracy of such mere estimates, it can not be said

34—85 KAN.

Campbell v. Brown.

that the conclusion reached by the jury was contrary to the evidence or unsupported thereby.

The amended petition alleged that Campbell made application in writing for "one quart of alcohol, commonly called grain alcohol to be used by the plaintiff as a domestic medicine and defendant then and there undertook and pretended to fill the order as aforesaid"; also, "plaintiff alleges that said application will show that this alcohol was purchased for a medicine." The defendant introduced a copy of the application, which calls for a quart of alcohol and oil needed by a horse as medicine for the disease of "sprain tendon." Considerable testimony was received as to whether this application was in its original form, one witness stating that he had examined it some time after it was made and that he did not remember that there was then written thereon "& oils," "horse," or "tendon." Another witness who examined it three days after it was made testified that it was then in the same condition as when offered in evidence. The cross-examination of the defendant and the photograph copy found in the counter abstract indicate that certain words are written over certain others or over places where others had been written. At any rate the question whether the paper in evidence was a true copy of the application actually made was sharply contested. Several questions were requested to be submitted to the jury touching this application and its truthfulness and good faith, upon the theory that the plaintiff could not recover if the deceased fraudulently applied for alcohol to be used for medicine, intending to use it as a beverage. This being the ground and purpose of the questions, there was no error in such refusal, for even had such intention existed this would not preclude a recovery or justify a sale of poison without label. (*Campbell v. Brown*, 81 Kan. 480, 485, 106 Pac. 37.) One of these questions was whether the copy introduced by the defendant was a true copy of the application

Campbell v. Brown.

made, and had this been requested for the purpose of clearing the defendant from any suspicion of having tampered with the paper it should have been submitted; but offered, as it appears to have been, for its bearing upon the good faith of the deceased it was properly refused.

The seventh question submitted was answered by the jury to the effect that the color of the alcohol kept by the defendant on the date in question was white or clear, which answer is said to be contrary to the evidence. However, an examination of the testimony given by various witnesses on this point shows sufficient conflict to preclude us from interfering with the finding reached by the jury. Question nine was:

"Did the deceased, David L. Campbell, purchase or have other and different liquors on the evening of February 22, 1907, than the alcohol bought of the defendant, Chase W. Brown?"

to which the jury answered, "No."

It is earnestly insisted that this answer is in direct conflict with the only evidence given touching the question. The witness Hollanburg swore that he saw Campbell come back from the defendant's store bringing a package comparing in size with the bottle said to contain the alcohol, and that he also had a jug of vinegar which witness knew was vinegar because he drank it; that as to the bottle of whisky "all I know about it is what they said, it was whisky, but I did n't drink it.

"Ques. Who drank the whisky?
"Ans. Mr. Cunningham and Mr. Campbell."

The only explanation of this answer is that the jury discredited or disregarded this witness, and as there was no impeachment and the record shows no fact or circumstance tending to contradict him the writer is of the opinion that this answer was in direct conflict with the undisputed evidence and should not have been allowed to stand, and especially so as the appellant in his

brief says the jury believed the witness, but that his evidence was immaterial. (*Railway v. Davis,* 64 Kan. 127, 67 Pac. 441, and cases there cited.) But the majority of the court hold that the jury were not obliged to believe this evidence and that their finding in conflict therewith should not be disturbed by the court after having been approved by the trial court. (*Railway Co. v. Geiser,* 68 Kan. 281, 285, 75 Pac. 68; *Railway Co. v. Willis,* 74 Kan. 849, 85 Pac. 1134.) Question 13 was whether Campbell procured from the defendant a quart of alcohol and some oils for the purpose of making some liniment to be used on the leg of a horse for a sprained tendon, and the jury answered, "No." The application offered in evidence showed this exact state of affairs, the defendant testifying that in addition to the alcohol he sold to the deceased some oils, and Mrs. Campbell testifying that her husband mixed some of the alcohol with oils to make a horse liniment. The only evidence that such oils, if any, were purchased for a horse afflicted with a sprained tendon is that shown by the copy of the application offered in evidence, the genuineness of which was, as already indicated, disputed and contested, hence it can hardly be said that the answer to this entire question was contrary to the undisputed evidence.

The refusal of several instructions requested covering the proposition that if the deceased obtained alcohol upon the statement that it was to be used as a liniment, intending to use it as a beverage, and then so used it, there could be no recovery, was proper, for the reason already stated.

It is argued that the pharmacy act operated as a legislative construction of that provision of the crimes act requiring wood alcohol to be labeled as a poison, and that an instruction to this effect, requested by the defendant, should have been given. Section 260 of the

crimes act (Gen. Stat. 1868, ch. 31, § 260, Gen. Stat. 1909, § 2763) is:

"Every person who shall sell or deliver to any other person any arsenic, corrosive sublimate, prussic acid, or any other substance or liquid usually denominated poisonous, without having the word 'poison' plainly written or printed on a label attached to the vial, box, or vessel or package containing the same, . . . shall on conviction be adjudged guilty of a misdemeanor, and punished by a fine not exceeding fifty dollars."

Many years later the pharmacy act was passed (Laws 1885, ch. 150), entitled:

"An act to prevent incompetent or unauthorized persons from engaging in the practice of pharmacy; also, to regulate the sale of poisons and proprietary medicines; to prevent and punish the adulteration of drugs, medicines, medicinal preparations, and chemicals; and to create a board of pharmacy for the regulation of the practice of pharmacy in the state of Kansas."

Section 1 (Gen. Stat. 1909, § 8095) makes it unlawful for any person to dispense medicine or poisons unless he be a registered pharmacist or has one in his employ, the penalty for violation being from twenty-five to one hundred dollars. Section 10 (Gen. Stat. 1909, § 8103) holds every proprietor of a drug store or pharmacy responsible for the quality of all drugs, chemicals and medicines he may dispense, and punishes a fraudulent adulteration thereof. Section 12 (amended by Laws 1887, ch. 174, § 4, Gen. Stat. 1909, § 8105) authorizes registered pharmacists to keep and sell, under the restrictions therein provided, all medicines and poisons authorized by the National, American, or United States dispensatory or pharmacopœia, and makes it unlawful to retail any articles enumerated in schedules A and B without distinctly labeling the box, vessel or paper, and also the outside wrapper or cover, with the name of the article and the word "poison." Certain other requirements were also made, not necessary to be noticed now. Schedule A includes poisonous vegetable alkaloids and

their salts, and schedule B includes mineral acids and all other virulent poisons. Wood alcohol, according to Professor Bailey, who testified in the case, is a volatile liquid, the product of the distillation of wood, and is considered a poison. Doctor Henderson testified that it is not a vegetable alkaloid, that it is distilled from vegetable matter.

The amendments made by chapter 174 of the Laws of 1887 do not materially change the situation so far as this case is concerned. If the pharmacy act alone applies then it is lawful to sell wood alcohol unlabeled unless it is included in schedule A or schedule B, and if included such unlawful sale would be without penalty. If the crimes act applies then a sale of unlabeled wood alcohol by anyone, whether a registered pharmacist or not, would be a misdemeanor. Whether wood alcohol is a "virulent poison," to be classed with others named in schedule B as amended, we need not now decide. That it is within the phrase "substance or liquid usually denominated poisonous," found in the crimes act, we do decide. It is also argued that the later act operated as a repeal of the former so far as the sale of wood alcohol is concerned, but an examination of both acts impels us to the conclusion that so far as this case is involved both are in force, the one unconstrued and unrepealed by the other.

It is finally urged that a new trial should have been granted because the jury returned a quotient verdict. In accordance with a practice which the writer believes never should have been permitted under the jury system, four of the jurors were examined as to the method used in arriving at the verdict for $8000. Their testimony showed, in substance, that upon reaching their room the jury were unanimous that the plaintiff should recover, and proceeded first to answer the special questions submitted. They then marked down what each juror thought the plaintiff should have, the amounts running from $5000 to $10,000, and when added and di-

Campbell v. Brown.

vided by twelve amounted to about $8300. It was then moved and carried *viva voce* that the amount should be $8000, and to this the twelve agreed. One juror testified that—

"Well, we thought if this thing was brought up and discussed we would probably be influenced by what one another said."

Another, that they took a ballot to find out how everybody felt, to get at the sum as everyone thought, "and to keep from jangling and tangling about it."

While this proceeding apparently included but little, if any, real discussion as to the reasons for allowing any given amount, and is not to be commended, still as verdicts are usually to some extent the result of comparison of views and compromise, we are not able to say that the one under consideration was such as must be set aside (*City of Kinsley v. Morse,* 40 Kan. 588, 20 Pac. 222), and our attention is called to no authority requiring such a holding.

Finding no material error, the judgment of the trial court is affirmed.

BURCH, J., dissents.

WEST, J., dissents as to paragraph 2 of the syllabus and the corresponding portion of the opinion.

PORTER, J. (dissenting) : I concur in the dissent.