No. 19,069.

JOE ROOT, *Appellee*, v. THE CUDAHY PACKING COM-
PANY, *Appellant*.

SYLLABUS BY THE COURT.

1. PERSONAL INJURIES—*Fall of Elevator—Expert Evidence—
   Not Prejudicial Error.* Testimony substantially in line with
   the former decision (88 Kan. 413, 129 Pac. 147) touching the
   actual operation and equipment of the elevator on which the
   injury was received, was introduced at length. *Held,* that a
   statement of an expert's opinion as to the effect of moisture
   upon the bull wheel was not materially prejudicial.

2. SAME—*Evidence—Comparison of Merits of Different Kinds
   of Elevators—Not Competent.* The defendant offered to
   prove by a witness familiar with friction-hoist elevators
   and also electric elevators in another packing house that
   the latter require more frequent repairs than the former,
   which offer was refused. The witness was permitted to
   explain in detail the working of friction-hoist elevators and
   the cause of their failure to work properly, and it was not
   error to exclude the offer to compare them with elevators
   of another kind.

3. SAME — *Instructions — Inaccurate Words Used — Not Preju-
   dicial.* The inaccurate or improper use of one or two words
   or expressions in an instruction is not material error when
   the entire instruction is not thereby rendered misleading.

4. SAME—*Instruction—Relating to Amount of Recovery—Not
   Prejudicial.* After charging as to the proper basis of re-
   covery the court instructed the jury that they could not
   assess the plaintiff's damages in a greater amount than
   the sum claimed in the petition. *Held,* that this can not
   properly be regarded as a hint that a verdict for the full
   amount would be approved.

5. SAME—*Refusal of a Request for a Proper Instruction—Not
   so Prejudicial as to Justify a Reversal.* While a requested
   instruction that any single defective or imperfect opera-
   tion of the elevator would not of itself be sufficient evi-
   dence nor any evidence of any previous notice or knowledge
   of any defect or insufficiency was proper and should have been
   given, as the jury were otherwise plainly and correctly
   charged as to the due diligence on the part of the defendant,
   its refusal was not such error as to justify or warrant a re-
   versal, which, under code provisions, civil and criminal, and

judicial decisions since territorial days, can only be ordered for errors which affirmatively appear to have prejudicially affected the substantial rights of the party complaining.

6. SAME — *Verdict for $12,000 — Does Not Show Passion or Prejudice of Jury.* The plaintiff, a robust man, was injured when forty-two years of age, and there was testimony tending to show that such injury resulted in two or three broken ribs, an inguinal hernia, varicose veins on the right leg, severe pain and suffering for six months, practical inability for a year to sit up, and disability, which would be permanent without surgical operation, to do manual work. Five years after the injury a jury trying the case examined the plaintiff's person and heard the evidence of physicians who had treated him, and awarded damages in the sum of $12,000. *Held,* that such amount, while large, does not appear to be so excessive as to show passion or prejudice.

Appeal from Wyandotte district court, division No. 3; HUGH J. SMITH, judge. Opinion filed March 6, 1915. Affirmed.

*J. E. McFadden,* of Kansas City, and *O. C. Mosman,* of Kansas City, Mo., for the appellant.

*James F. Getty,* of Kansas City, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued for damages on account of an injury received by the fall of a friction-hoist elevator in the defendant's packing house. The facts including the description of the elevator are found in *Root v. Packing Co.,* 88 Kan. 413, 129 Pac. 147. The decision in that case ordered a reversal of the plaintiff's judgment for error in overruling a demurrer to his evidence. The case was again tried, resulting in a verdict and judgment for the plaintiff, and the defendant appeals, complaining of the overruling of the demurrer to the evidence, of the admission of certain evidence, the exclusion of certain evidence, the giving and refusing of certain instructions, and the amount of the verdict. The petition alleged that the elevator was unfit for human beings to ride on, in that its construc-

tion was such that it was exceedingly liable to accident by reason of its parts being liable to get out of repair and refusing to work, and that no appliance could be attached that would insure safety to those riding thereon in case of accident, and that the apparatus which was attached thereto for the purpose of stopping it in case for any reason the appliances to hold it stationary or cause it to ascend or descend should refuse to work, was insufficient, worn, and had not been properly inspected or kept in repair. It will be observed that these allegations amounted to a charge of improper construction, want of inspection and defective condition. In the former opinion it was said that no attempt was made to establish liability on the second ground. This time testimony was introduced as to the character of construction, also touching defective condition and failure to inspect.

Complaint is made that improper evidence was received, both expert and nonexpert, as to the operation of friction-hoist elevators of the kind in question. It is argued that testimony that elevators of this sort work improperly because overloaded or because improperly adjusted or because of moisture on the bull wheel or wear on the face of the brake block does not tend to show anything inherently wrong in this class of elevators, and it is contended that testimony declared incompetent in the former opinion was received upon the second trial. That thus referred to in the former opinion was expert or opinion evidence and not evidence of the actual operation of the elevator; that is to say, it was therein held incompetent for a witness to testify whether or not in his opinion certain things would happen in the operation of the elevator, and on the second trial the happening of such things was actually testified to. While a number of the witnesses were sufficiently familiar with such elevators to be deemed experts, their testimony was mainly with reference to actual construction and operation, and we

find no departure therefrom amounting to material error.

Criticism is made of certain medical evidence touching the plaintiff's condition after the injury, but nothing prejudicial is found therein.

Complaint is made of the evidence of one witness who described the safety devices and was permitted to testify that he knew of no test thereof having been made. This taken in connection with the evidence of improper and defective operation and the charge of failure to inspect was neither outside the issues nor incompetent.

Error is predicated upon the admission of the testimony of Doctor Hassig that the plaintiff did not complain to him of hernia or varicose veins when examined by the doctor, to which the plaintiff replies that on cross-examination the plaintiff testified that he did not tell the doctor anything about these matters, because he was looking for it himself; also, that Doctor Hassig testified on redirect examination that the plaintiff told him about the varicose veins and hernia. The abstract shows that this was the fact, and hence this complaint is without substantial basis.

Fault is also found because the court refused the testimony of a master mechanic for another packing house that the electric elevators there require more frequent repair than the friction-hoist elevators, and that the former would sink down a little when brought level with the floor and loaded. The witness did testify that friction-hoist elevators with the block properly adjusted would not sink and slide down the shaft; that when loaded and brought up level with the floor and loaded there would be a slight descent, depending on what kind of rope is used on the cable; that it would simply take the slack out of the rope. The defendant offered to prove by this witness that as to the six friction-hoist elevators in his plant the electric elevators require more frequent repairs and will sink

down or give a little when brought level with the floor and loaded, and that the friction-hoist elevators there had been conducted with less repairs than the electric elevators. The witness was permitted to go ahead and explain in detail the working of the friction-hoist elevators and the cause of their failure to work properly, and the refusal to permit a comparison between them and another class of elevators in the manner indicated by the offer was not material error, there being nothing to indicate that the electric elevators in question should be regarded as furnishing a standard by which to judge the one on which the injury occurred.

Complaint is made of instruction No. 8, which was to the effect that the test to be applied in determining the question of negligence was not merely whether the defendant omitted to do something which it could have done, or whether better machinery could have been obtained, but whether in selecting the elevator ordinary care and prudence were exercised and whether it was in fact adequate and proper for carrying passengers and employees, and the use to which it was applied. The use of the words "merely" and "passengers" is the fault found with this instruction. There was no evidence that the elevator was used for the transportation of persons other than employees, and while the use of the word "passengers" was inaccurate the instruction as a whole was not sufficiently misleading to work material prejudice.

It is urged that instruction No. 10 unnecessarily called attention to the fact that the evidence might have disclosed negligence in some other particular than that alleged in the petition, but as the jury were plainly told that they must be confined to the allegations of negligence found in the petition it is impossible to see how the defendant was harmed by this instruction.

Instruction No. 14 was to the effect that if the fall was caused by the defective, improper and faulty construction of the elevator and that the appliance regularly and ordinarily used for stopping it failed to work

by reason of its being insufficient, worn or out of repair, such construction being unknown to the plaintiff, he could recover. Counsel seem to regard this as a suggestion to the jury that some other sort of safety device should have been used. We regard this instruction, however, as fairly following the allegations of the petition on which evidence had been introduced.

Instruction No. 16, submitting the question of diligence in inspection of the elevator, is complained of on the ground that the defendant made no attempt to prove failure in that respect. There was testimony by a witness whose duty it was to inspect the elevator that on the morning before the accident he saw the brake block and saw that it was too thin, but did not notice whether it was cracked or not. And there was considerable testimony introduced in chief and drawn out in cross-examination touching the matter of inspection which made this instruction applicable and proper.

Complaint is made that the jury were told that they could not assess plaintiff's damage in a greater amount than the sum claimed in the petition. This language, however, closed an instruction giving the proper basis of recovery, and the result does not indicate, as suggested, that the jury regarded it as a hint that more than twice the amount found would have been approved by the court.

Instruction No. 8, offered by the defendant, its refusal being assigned as error, was to the effect that any single defective or imperfect operation of the elevator would not of itself be sufficient evidence nor any evidence that the defendant had any previous knowledge or notice of any defect or insufficiency. The jury were expressly told, however, in the 16th instruction that if they should believe that the elevator was reasonably safe and suitable and the defendant had used due diligence in the matter of inspection and repair it could not be held liable for any injury not resulting from failure to exercise such care nor resulting from any cause which could not be foreseen or prevented by the exercise of

ordinary care.   In view of the evidence touching the matter of inspection and repair it was not prejudicial error to refuse this instruction, for there was no occasion for the jury to regard a single defective or imperfect operation as of itself evidence of previous notice or knowledge of any defect, and hence no necessity for the instruction appears to have existed.   The rule of law embodied in the instruction is correct, but its applicability to the situation presented by the entire evidence shown by the record is so negligible, or so nearly so, that it can not be said that the defendant suffered material prejudice by its refusal.   Counsel say it would have restrained the jury in coming to the conclusion that "there must have been something wrong or the accident would not have happened" and would have compelled them to search the evidence for proof of the facts.   But we are not supplied with any reasonable ground for the suggestion and have failed to discover one in the record presented.   Under the command of the codes, civil and criminal, and the authority of precedent for over half a century, we are prohibited from reversing judgments for mere technical errors or irregularities which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining when it appears upon the whole record that substantial justice has been done.   (Crim. Code, § 293; Civ. Code, §§ 141, 581; *Hopkinson v. Conley,* 75 Kan. 65, 88 Pac. 549; *Coleman v. MacLennan,* 78 Kan. 711, 744, 98 Pac. 281; *The State v. Hammon,* 84 Kan. 137, 145, 146, 113 Pac. 418; *Saunders v. Railway Co.,* 86 Kan. 56, 62, 63, 119 Pac. 552.)

Finally, it is insisted that the verdict is excessive and was given under the influence of passion and prejudice.   This was one of the grounds set forth in the motion for a new trial, and the fact that such motion was overruled would indicate that the trial court did not regard the verdict too large or deem it the result of passion or prejudice.   The former trial resulted in a verdict for $5000, the latter, five years after the in-

jury, in a verdict for $12,000. It is suggested that this disparity in itself indicates passion and prejudice. But the contrary was held in *Railway Co. v. Johnson,* 59 Kan. 776, 53 Pac. 129. The evidence is said to be wanting in a disclosure of such injuries as to justify the verdict, and the construction put thereon by counsel would leave it a frail support. But the jury regarded the injuries much more seriously, and it remains to inquire whether or not they did so rightfully. The plaintiff testified that he was forty-seven years old, which is equivalent to saying that he was forty-two when the injury occurred.

"When I come to, everything hurt me. I could not sit or lay down; . . . They took me home in a carriage. . . . I remained in bed six months, during that time everything hurt me. I could n't lift myself. . . . I suffered the greatest pain in the right side for six months. I got up and stayed up about ten minutes. For a whole year I could n't sit up long, on my feet all the time. I get up and walked awhile and then lie down again. After the six months I was at the hospital eight days. I left the hospital because they was going to make an operation on me, and I did n't want to be operated on. I have tried to work but I can not. When I started to work the whole side hurts me and I still have pains in the side. I· have broken bones down there, ribs, whatever it is. . . . I first discovered that I had a hernia or rupture the time I got hurt. In about a week after I was injured I saw those big veins come out on my legs. . . . I did n't tell the Doctor anything about the varicose veins because he was looking for himself. I never told him anything about the hernia. After these varicose veins came on they never went away; they are still larger. . . . The first time I tried to work was right away after the first trial, (which was had in 1911) I tried to get work at an iron foundry. Before the injury I always stood on my feet at my work and all the work I ever did at the packing houses was this heavy work, lifting trucks and pushing them."

The jury examined the plaintiff's person, and of course we have no means of knowing what evidence of injury they found thereby or how his condition and

appearance impressed them.   Doctor Richards testi-
fied that when he was called in July, 1908, to treat
the plaintiff he was undoubtedly suffering pain; he
had two fractured ribs, possibly three, on the right
side, and the symptoms of a general jar up, vomiting,
nausea and weakness.   His principal pain was at the
seat of the fractured ribs; "He had pain all over his
abdomen and called my attention to it through his
interpreter.   No point particularly outside of the seat
of the fractured ribs."   He treated him about six weeks
for the fractured ribs; his attention was from time to
time called to different little points or pains about the
abdomen but he never treated them particularly.
"There were considerable signs of trouble inside,
through vomiting and weakness that continued for some
length of time."   He found no indication of hernia and
never examined him with reference to varicose veins.
Varicose veins in a man's limbs always get larger.
He may be cured by an operation.   Doctor Nesselrode
examined the plaintiff at the time of the former trial
and found an inguinal hernia, varicose veins and a
roughness of the rib.   He regarded the plaintiff unfit
for manual labor, but thought that with operations for
the hernia and varicose veins and the hernia cured he
ought to be in condition to perform manual labor.
After retiring for a personal examination of the plain-
tiff witness returned and testified to finding a right
inguinal hernia and very extensive varicose veins on
his right leg.   There was testimony to show that oper-
ations for the hernia and varicose veins might reason-
ably be expected to prove successful, and if so, the
plaintiff would be able to do manual work.   Of course
the actual success and permanence of such operation
and degree of restoration must be somewhat problem-
atical, and the testimony already quoted and referred
to indicates that an able-bodied man forty-two years
old was rendered unable to earn a living in his accus-
tomed way or to do hard work, and that such condition

had existed for five years and without an operation would continue and tend to grow worse. The record does not show what he was earning, but it must be presumed that he was making reasonable wages for the work he was doing, and with his physical ability and life expectancy it is a very difficult matter to say what he is entitled to recover. Not having seen the paintiff or examined his person the sum seems large, but the jury who had these advantages did not so regard it, and the defendant placed but one medical witness on the stand and he had not examined the plaintiff for some time. The physician who examined him critically in 1912 did not testify, and the jury did not have his judgment to aid theirs in considering the evidences of injury presented by their physical examination. We are not able to say from the record before us that the verdict is so excessive as to show passion or prejudice. (*M. K. & T. Rld. Co. v. Weaver,* 16 Kan. 456; *K. P. Rly. Co. v. Peavey,* 34 Kan. 472, 8 Pac. 780; *Van Vrankin v. Railway Co.,* 84 Kan. 287, 114 Pac. 202; *Barnett v. Cement Co.,* 91 Kan. 719, 139 Pac. 484.)

Having carefully examined and considered each point raised by the appeal the record shows no error of a materially prejudicial character and the judgment is affirmed.