No. 31,738

LOTTIE NEWELL, *Appellee*, v. THE CITY ICE COMPANY and C. L. WALKER, *Appellants*.

(34 P. 2d 558.)

Opinion filed July 7, 1934.

*Thomas F. Doran, Clayton E. Kline, Harry W. Colmery* and *M. F. Cosgrove,* all of Topeka, for the appellants.

*J. J. Schenck* and *C. P. Schenck,* both of Topeka, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Lottie Newell brought this action against the City Ice Company and C. L. Walker, to recover damages for injuries sustained in a collision between the automobile in which she was riding and the truck negligently operated by the Ice Company for whom C. L. Walker was driver, and who was an agent and servant of the Ice Company.

Defendant Walker was going south on Monroe street, and the plaintiff was going east on Ninth street in the city of Topeka. It is alleged that the defendant was operating its truck on the wrong side of the street at a great speed in violation of the ordinances of the city; that plaintiff's automobile was in the intersection ahead of the truck, but that the driver ignored her and drove so rapidly that his truck struck the rear wheel of the automobile, turned over the car and severely injured the plaintiff. The result of the trial was in favor of the plaintiff, the jury awarding her $150 for the destruction of her automobile and $3,800 for personal injuries.

In the motion for a new trial it was alleged that the verdict was given under the influence of passion and prejudice, in that it was contended that it was a quotient verdict, and further that jurors had considered that the defendant was insured, and that the amount found would be paid by an insurance company. The motion for a new trial was overruled by the trial court, and the only contention on this appeal is that the court erred in denying the motion, which specified that the jury arrived at a verdict on the quotient plan, and further that there was misconduct of members of the jury in considering the question of insurance carried by the defendants. Jurors were interrogated about the methods by which they reached the verdict in which they awarded $3,800 for personal injury and $150 for the injury and destruction of the automobile. There was testimony that when they first met for consultation there was a

suggestion that each juror should mark on a piece of paper the amount the plaintiff should recover in order to get an idea of how the jury stood generally. It appeared that while the vote was taken to demonstrate the general standing of the jury, there was no agreement among jurors to be bound by the result. The jury continued to discuss the amount to be recovered until the second day of their consideration of the case—those who had marked in the lower amount coming up higher, and those marking the higher ones coming down until they reached an agreement for $150 for the loss of the car and $3,800 for personal injuries.

First, it appears there was no agreement that the quotient should be the verdict, and second, after the addition and division plan, the discussion and consultation as to the amount continued two days, and many votes were taken before arriving at an agreement. Within the precedents the result cannot be treated as a quotient verdict. (*Bailey v. Beck*, 21 Kan. 462; *City of Kinsley v. Morse*, 40 Kan. 588, 20 Pac. 222; *K. C. W. & N. W. Rld. Co. v. Ryan*, 49 Kan. 1, 30 Pac. 108; *Van Vrankin v. Railway Co.*, 84 Kan. 287, 114 Pac. 202; *Campbell v. Brown*, 85 Kan. 527, 117 Pac. 1010; *Hamilton v. Railway Co.*, 95 Kan. 353, 148 Pac. 648; *Schaake v. Railway Co.*, 102 Kan. 470, 170 Pac. 804.)

It appears that the verdict rendered was not actually the amount of the quotient, and, while error is assigned in the record, it may be said that the defendants do not seriously contend in their brief that it affords a ground for a new trial.

The only other feature involved in the appeal is that some jurors spoke of the likelihood that the Ice Company was insured. The testimony on the motion for a new trial took a wide range and some incompetent testimony was received as to reasons given by jurors for their verdict. In *Ohlson v. Power Co.*, 105 Kan. 252, 182 Pac. 393, testimony of that kind was received. It was said that—

"A juror may testify as to what transpires in a jury room (*Barber v. Emery*, 101 Kan. 314, 318, 319, 167 Pac. 1044), but he may not tell what considerations constrained him to his decision, nor give the reasons for his verdict. In short, he cannot be heard to confess his own recreancy in order to impeach his own verdict. (*Perry v. Bailey*, 12 Kan. 539; *Brice-Nash v. Salt Co.*, 83 Kan. 347, 111 Pac. 462; *Madison v. Railway Co.*, 88 Kan. 784, 129 Pac. 1157.)" (p. 254.)

Farther along in the opinion it was said:

"Another juror testified that the matter of the defendant having accident or liability insurance was mentioned in the jury room but that 'it was stated that we (the jury) should not take that into consideration. It was generally understood that they couldn't use it.' "

The present case is unusual in its facts. No question as to insurance was asked by plaintiff's counsel nor was there any suggestion in the evidence that defendants carried liability insurance. No agent nor attorney of defendant introduced the subject of insurance as a feature. Where it is mentioned in the jury room and outside of the evidence without the knowledge or participation of the successful party, it has been held that much liberality is indulged in sustaining the verdict notwithstanding such misconduct. (*State v. Snow*, 130 Minn. 206.) Here two or three of the jurors are said to, have discussed the subject that such trucks carried insurance. A juror said that it was talked pro and con in the jury room, that he did not know that defendant was insured, but thought it possible that it might be. He said it was idle talk back and forth. One juror remarked that it was compulsory for such trucks to have insurance, but none of the jurors expressed any personal knowledge whether or not defendant had liability insurance. No juror testified that he was influenced by what seems to be random statements of possible liability insurance or by the additional statement that one juror said that such cases were taken by an attorney on contingent fees which reduced the net amount the plaintiff would receive. Here it was casually mentioned in the jury room that such companies as defendant were required to have liability insurance, and the juror did not know that defendant had such insurance, but possibly it had. It was merely "idle talk back and forth," and the court concluded that while it was outside of the evidence and not proper for consideration, it did not substantially affect the amount of the recovery. Not every mistake made in the district court is a ground for a reversal of the judgment. In *Hamilton v. Railway Co.*, supra, the matter of immaterial error was considered, and it was said that the code amendment of 1909, which provided that no judgment should be reversed for errors in the pleadings or proceedings which did not affect the substantial rights of the adverse party, was controlling. It was held that the purpose of the amendment was to prevent reversals when it appears upon the whole record that substantial justice has been done. That may be said of the present case. In view of the uncontested features of the case, it cannot be held that the verdict was excessive or that the mention of insurance had substantially affected the amount of the verdict.

In *Clark v. Brady*, 126 Kan. 59, 266 Pac. 740, a new trial was

sought because of misconduct of the jury, but this was denied, the court saying:

"There is no showing here that the jury was prejudiced by such remarks other than by a process of reasoning from cause to effect and a reasonable presumption, but presumptions of prejudice of the jury from questionable remarks do not obtain in this state. To effect a reversal, prejudice must appear, and it does not appear in this case." (p. 61.)

See, also, *Ohlson v. Power Co.*, supra; *Hutson v. Imperial Royalties Co.*, 134 Kan. 378, 5 P. 2d 825; *Anderson v. Thompson*, 137 Kan. 754, 22 P. 2d 438. In the last mentioned case the misconduct of the jury which was treated was held to be without substantial merit. Two or three of the jurors said they would not sign a verdict of guilty because plaintiff's attorney had the case on a percentage basis and they would not give him a dime. The comment of the court is illustrative of the final disposition of the case. It was said that—

"Public policy forbids that after the jury has tried the case the court shall, on motion for new trial, proceed to try the jury. A verdict may not be impeached by an inquiry which reaches a juror's views or the reasons for those views, . . . or which reaches what influenced those views [citing authorities]. Besides that, the jury being what it is, jurors will act like human beings in the jury room, and will indulge in bluster and hyperbole and animated irrelevancies. Not only does the law presume a juror respects the obligation of his oath and votes his convictions, but generally he in fact does so; and due allowance must be made for some exuberance in jury-room discussion or the court must keep on granting new trials in important cases until a perfectly spiritless jury can be secured. In this instance there was some evidence that at no time did the jury regard Lavon Thompson as to blame for the accident. The district court doubtless knew its jury. In denying the motion for new trial the court said it was satisfied the verdict was correct and was the true verdict of the jury; and in the face of this finding this court cannot say plaintiff suffered prejudice to his substantial rights." (p. 758.)

The defendant cites and relies largely on *Bryant v. Marshall*, 135 Kan. 348, 10 P. 2d 868, in which the question we have here was involved. It was there said:

"Here was a mother suing her daughter for the large sum of $20,877.69 for the alleged tortious act of the daughter. Nevertheless they continued to live cordially together in the same house. The daughter had to work outside the home, and it would take a long time to earn the money to pay so large a sum as that sued for. Another intriguing feature of the evidence was that the daughter served as interpreter when lawyers called to confer with the mother on matters relating to the lawsuit. The daughter rendered assistance in the taking of photographic exhibits to be used in evidence against herself. But

this unique attitude of the litigants would become quite understandable to the dullest juror when that newspaper clipping was read in the jury room. If an insurance company and not the daughter, who had to work for a living, was the party to whom the mother was really looking for compensation for her injuries, it would not be unusual for the jury to render a handsome verdict, supposing, as they were bound to do, that it was only colorably rendered against the defendant." (p. 354.)

The application and force of this authority is much weakened by the mysterious features mentioned and the final disposition of the case in this court on the subject of contributory negligence. While there was misconduct in the comments on insurance, this court was of the opinion, as was the district court, that there was contributory negligence of plaintiff and the judgment was directed in favor of the defendant notwithstanding the misconduct. In this case prejudice to the defendant was not shown. The whole record, when read, shows that the references to insurance did not produce any prejudice to the substantial rights of the defendant.

That was the finding of the district court, and our view is that under the admonition of the code there can be no reversal of the ruling of the district court.

The judgment is affirmed.