Gardner, J.;
In this appeal, Harvey L. Moore asks us to reverse the district court’s ruling which found his mother’s transfer-on-death deed valid, although it was signed not by his mother but by his ex-wife at his mothers direction, as an amanuensis—one who copies or writes from the dictation of another. That transfer-on-death (TOD) deed left the real estate in question to Harveys ex-wife, Maureen, and had the effect of disinheriting Harvey, who would have inherited the real estate under tire laws of intestate succession absent a valid TOD deed. Finding no reversible error, we affirm.

Factual and procedural background

Roxie Moore married Harvey Moore, Sr. and they had one child, Harvey Moore, Jr. (Harvey). Roxie and Harvey Sr. made their living primarily by ranching and farming, and over the years acquired around 900 acres. When Roxie died, only 360 acres located north *669 and west of Cambridge, Kansas, remained. This property was referred to as “the homeplace” and is the subject matter of this litigation.
Harvey married Maureen Miles, and they had two sons: Bart A. Moore and Ryan C. Moore. In the 1980s, Roxie and Harvey Sr. moved from the homeplace to Burden, Kansas, to be closer to their grandchildren, Bart and Ryan. Harvey Sr. passed away in 1985.
Roxie suffered a stroke in 1991 which greatly affected her speech, but she continued to live in her home in Burden for the next 12 years. Several witnesses testified that although Roxies speech was impaired, one could communicate with her if one was patient. However, if Roxie did not like someone or became frustrated, she would not communicate.
In December 1992, Harvey and Maureen divorced. Harvey moved in with Roxie and stayed there for the next 11 years. Roxie and Harvey had what was described as a “strained relationship,” but Maureen and her sons maintained a very close relationship with Roxie.
In August 2003, Roxie fell in her home in Burden and was taken to the hospital and then to Cumbernauld Village, an assisted living facility in Winfield, Kansas. Maureen made the arrangements to move Roxie to Cumbernauld. Over tire next 6 years, approximately $265,000 was spent on Roxies nursing care. Harvey was asked to help with the expense but paid nothing. Maureen visited Roxie multiple times a week, while Harvey never visited.
On April 29, 2004, Roxie signed a general durable power of attorney (DPOA) naming Maureen as her attorney-in-fact. Shortly thereafter, Roxie asked Maureen to assist in transferring the home-place to her grandsons. Roxie wanted an attorney to draft a TOD deed to Maureen, who would hold the property until the grandsons were secure enough financially to own it themselves. Soon thereafter, an attorney drafted the TOD deed for Roxie which is the subject of this appeal.
The facts relating to the execution of the TOD deed are not disputed. On May 10, 2004, a notary public from the attorneys office went to Cumbernauld Village to notarize the TOD deed prepared by the attorney. The notary signed the document, but she could *670 not testify at trial as to any particulars because she could not recall the event. Others present during the execution of the TOD deed were Maureen, Mildred Moore, Deborah Keely, Bart, and Ryan. Maureen testified that Roxie was in her bed experiencing pain. Maureen handed the TOD deed to Roxie, who read the document. Maureen asked Roxie if they could get the staff to help her out of bed, but Roxie refused and told Maureen, “I want you to sign it.” Maureen took the TOD deed and signed Roxie A. Moore’s name as grantor “by Maureen Miles, Power of Atty.”
Bart and Ryan testified they were not visiting Roxie that day as witnesses. They were there only because it was Mothers Day. Both Bart and Ryan recalled the TOD deed being read out loud. Ryan asked Roxie, “Are you sure this is what you want to do, Grandma?” Roxie replied, ‘Tes.” Deborah Keely, Maureens friend, testified that Roxie told Maureen she was in a lot of pain and asked Maureen to sign the deed. She also saw Roxie look at the document and testified “something was read to her.” The TOD deed was recorded the same day it was signed, directly after the general DPOA was recorded.
Roxie passed away intestate on September 15, 2009. Upon her death, the ownership of the homeplace was transferred to Maureen by operation of the TOD deed. Had the real estate transferred pursuant to the laws' of intestate succession and without a TOD deed, Harvey would have owned the homeplace. In October 2009, Harvey expressed a desire to build a home on the home-place and learned from Bart that Maureen was the record owner of the property. On November 3, 2009, Maureen and her current husband executed a TOD deed naming Bart and Ryan as the beneficiaries. Three years later, Maureen and her husband signed a warranty deed conveying the homeplace outright to Bart and Ryan.
Harvey later filed a petition for determination of descent of the homeplace.' Bart and Ryan subsequently filed written defenses, claiming they were the legal owners of the homeplace, and filed a separate petition to quiet title and for declaratory judgment. After the two cases were consolidated, the parties filed cross-motions for summary judgment. The argument and the authorities cited *671 in both motions focused almost exclusively on Maureen’s legal authority under the DPOA to sign Roxie’s name to the TOD deed.
The district court granted, for the most part, Harveys motion for summary judgment, finding Maureen did not have express authority pursuant to the DPOA to sign the TOD deed as attorney-in-fact for Roxie. Bart and Ryan moved to reconsider based upon a nonagency theory as to the validity of the TOD deed—the amanuensis theory. The district court granted the motion and set the matter for trial, limiting the issues to the nonagency theory because Maureen’s authority under the DPOA had previously been decided.
Following a trial on the amanuensis theory, the district court found that under Kansas law, a TOD deed may be signed by another. The district court then found that because Maureen was an interested amanuensis—one who would directly benefit from the transfer of title—the TOD deed was presumed invalid. Therefore, Maureen, Bart, and Ryan had the burden of proof to show that “Maureen’s signing of Roxie’s name was a mechanical act, in that Roxie intended to sign the TOD deed using the instrumentality of the amanuensis.” The district court then addressed whether Roxie possessed the necessary mental capacity to execute the TOD deed and found that Harvey failed to meet his burden to show Roxie’s lack of capacity. Next, applying a two-prong test to determine whether undue influence was exerted over Roxie, the district court found: (1) Maureen was in a confidential and fiduciary relationship with Roxie; and (2) suspicious circumstances surrounded the making of the TOD deed. Thus, undue influence was presumed. But the district court found sufficient evidence had been presented to overcome this presumption. The district court ultimately concluded that Roxie intended to sign the TOD deed, Maureen’s signature was a mechanical act, and the presumption of invalidity of the TOD deed was overcome. Harvey timely appeals.
I. The district court did not err in admitting evidence that Roxie instructed Maureen to sign the TOD deed
We first address Harvey’s contention that the district court erred by admitting parol evidence and hearsay that Roxie. told Maureen to sign the TOD deed for her.

*672
A. Parol Evidence

Harvey contends that the district court erred by “permitting] parol evidence to establish that Maureen signed the transfer-on-death deed not as attorney-in-fact but as the amanuensis of Roxie.” Harvey apparently contends that Maureens signing Roxie A. Moore’s name as grantor “by Maureen Miles, Power of Atty.” is part of the deed and is contradicted by oral testimony that she signed not as power of attorney, but in another capacity—as an amanuensis.
The amanuensis rule provides that “[a] signature to an instrument may be attached by. .. the hand of another, at the request of a party . . . ." Kadota Fig Ass’n. v. Case-Swayne Co., 73 Cal. App. 2d 815, 819, 167 P.2d 523 (1946). “The Oxford English Dictionary (2d ed. 1989) defines ‘amanuensis’ as ‘one who copies or writes from the dictation of another.’ ” Estate of Stephens, 28 Cal. 4th 665, 671 n.1, 122 Cal. Rptr. 2d 358, 49 P.3d 1093 (2002). Whether the district court erred in admitting this evidence raises a question of law which we review de novo. State v. Bowen, 299 Kan. 339, 348-49, 323 P.3d 853 (2014).
Generally, the parol evidence rule provides that oral testimony of a prior agreement cannot be used to vary the terms of a written instrument. See State v. Hood, 255 Kan. 228, 236, 873 P.2d 1355 (1994).
‘“When a contract is complete, unambiguous and free of uncertainty, parol evidence of a prior or contemporaneous agreement or understanding, tending to vary or substitute a new and different contract for the one evidenced by the writing is inadmissible.’” Branstetter v. Cox, 209 Kan. 332, 334, 496 P.2d 1345 (1972) (quoting Thurman v. Trim, 206 Kan. 118, Syl. ¶ 2, 477 P.2d 579 [1970]).
This rule is not a rule of evidence but of substantive law whose applicability is for the court to determine. Phipps v. Union Stock Yards Nat'l Bank, 140 Kan. 193, 197, 34 P.2d 561 (1934). Thus no contemporaneous objection is required.
The parol evidence rule applies when parties to a contract dispute the terms of the written agreement. See Waste Connections of Kansas, Inc. v. Ritchie Corp., 296 Kan. 943, Syl. ¶ 3, 298 P.3d 250 (2013) (when a court finds the written contract language is ambiguous, parol evidence may be introduced to ascertain the intent *673 of the parties). But Harvey was not a party to the TOD deed, and he has not shown that the parol evidence rule operates to protect him, a stranger to the transaction. Nor does he dispute the terms of the TOD deed itself or claim that mutual mistake prevented the formation of that deed.
To the extent Harvey contends that the DPOA itself precludes parol evidence of subsequent oral authority, he errs, as the parol evidence rule precludes only a “prior or contemporaneous oral agreement.’” See Branstetter, 209 Kan. at 334.
“[T]he parol evidence rule prevents a party to a written contract from attempting to vary its terms by relying on oral representations, be they characterized as negotiations or promises, made in discussions leading up to the agreement. [Citation omitted.] A written contract, in most instances, subsumes earlier oral discussions or agreements.” Bouton v. Byers, 50 Kan. App. 2d 34, 46, 321 P.3d 780 (2014), rev. denied 301 Kan. 1045 (2015).
Evidence that Maureen signed the TOD deed as an amanuensis is not evidence of an agreement prior to or contemporaneous with the drafting of the TOD deed.
Further, “there is a wide distinction between an attempt to contradict the terms of a written instrument and to explain the circumstances and conditions under which it was executed and delivered.” In re Estate of Goff, 191 Kan. 17, 29, 379 P.2d 225 (1963). “[T]he parol evidence rule is not violated when the evidence tends to show the relation of tire parties and the circumstances under which the contract was executed.” Miles Excavating, Inc. v. Rutledge Backhoe & Septic Tank Services, Inc., 23 Kan. App. 2d 82, 84, 927 P.2d 517 (1996) (citing In re Estate of Goff, 191 Kan. at 29.
Such is the case here. Maureens signature as “DPOA” reflects her subjective belief that she was authorized to sign the deed pursuant to her DPOA. Yet even assuming that tire Kansas Power of Attorney Act would not have authorized Maureen’s signature on this TOD deed, we find nothing in that Act, in the TOD deed itself, or in the parties’ prior agreements to contradict or preclude Maureen’s signing as an amanuensis. In short, Harvey fails to show that the challenged evidence is inadmissible parol evidence.

B. Hearsay

Harvey also mentions hearsay in his brief, but we are uncertain *674 whether he intends to raise this argument on appeal. Harvey contends that he “asserted that the statements of Roxie sought to be admitted by Maureen were hearsay pursuant to K.S.A. 60-460.” Those statements were apparently that Roxie was in a lot of pain and therefore asked Maureen to sign the TOD deed for her. To the extent Plarvey intends to raise hearsay as a separate issue on appeal, we find no error for three reasons, which follow.
First, Harvey has not shown that he properly preserved this issue at trial, as is necessary. The record shows that Harvey raised a hearsay objection to this evidence during the initial summary judgment motion related to the DPOA, and the district court found a hearsay exception applied. But Harvey did not make a contemporaneous objection to this evidence at the subsequent trial on the issue of amanuensis, as is necessary. See State v. Kelly, 295 Kan. 587, 590, 285 P.3d 1026 (2012) (explaining the contemporaneous objection rule and finding that a pretrial ruling is not sufficient because the materiality of the proposed evidence may not become apparent until other evidence has been admitted); State v. Bogguess, 293 Kan. 743, Syl. ¶ 1, 268 P.3d 481 (2012) (finding the exception to the contemporaneous objection rule is explicitly limited to a bench trial on stipulated facts). By not renewing his hearsay objection at trial, Harvey waived it.
Second, to tire extent Harvey argues on appeal that this evidence was inadmissible hearsay, this argument is raised only incidentally in his brief and is neither argued nor supported with pertinent authority. See Friedman v. Kansas State Bd. of Healing Arts, 296 Kan. 636, 645, 294 P.3d 287 (2013).
Third, even if we had addressed the hearsay issue on its merits, Harvey would not have succeeded. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. K.S.A. 2016 Supp. 60-460. The trial court admitted the challenged testimony (that Roxie told Maureen she was in a lot of pain and asked Maureen to sign the TOD deed for her) under the following exception to the hearsay rule: “a statement of the declarants [] then existing state of mind, emotion or physical sensation, including statements of... bodily health... when such a... physical condition is in issue or is relevant to prove or explain acts or conduct of the declarant.” *675 K.S.A. 2016 Supp. 60-460(1). The court cited Laterra v. Treaster, 17 Kan. App. 2d 714, 720-21, 844 P.2d 724 (1992), which affirmed the admission of decedent’s statements regarding his intent and plans for his son s future as expressions of his then-existing state of mind. Harveys sole challenge to the district courts ruling is to state that Laterra is “not on point as there was no writing by which the statements of Laterra were being sought to interpret.” Harveys argument appears to relate more to parol evidence than to hearsay and fails to show error in the district courts analysis.
We believe Roxie s direction for Maureen to sign the deed for her is not hearsay, but is instead a verbal act.
“‘A second kind of situation in which utterances are not offered testimonially arises when the utterance accompanies conduct to which it is desired to attach some legal effect. The conduct or act has intrinsically no definite significance, or only an ambiguous one, and its whole legal purport or tenor is to be more precisely ascertained by considering the words accompanying it. The utterance thus enters merely as a verbal part of the act, or, in the common phrase, a “verbal act.”’” Campbell v. Brown, 81 Kan. 480, 483-84, 106 P. 37 (1910).
An out-of-court statement is hearsay only if it is offered for its truth. “An order or instruction is, by its nature, neither true nor false and thus cannot be offered for its truth.” United States v. Shepherd, 739 F.2d 510, 514 (10th Cir. 1984). As such, Roxie’s statements are part of the res gestae of the act of signing and are not treated as hearsay. See Campbell v. Brown, 81 Kan. at 484.
Rut whether Roxie s statements were verbal acts that are non-hearsay in nature, or whether they instead fall within an exception to die hearsay rule, as the district court found, the result is the same: the evidence was not excludable as hearsay. No other objection to admission of this evidence was raised. Accordingly, the fact was established, and was -not disputed, that on May 10,2004, Roxie A. Moore instructed Maureen E. Miles to sign the TOD deed for her, and Maureen did so. ■
II. The amanuensis rule is valid and applicable
We next examine whether the district court properly found the amanuensis rule valid in Kansas and applicable here.
“The ‘amanuensis rule’ provides that where the signing of a grantor’s name to a *676 deed is done with the grantors express authority, the person signing the grantor’s name is not deemed an agent but is instead regarded as a mere instrument or amanuensis of the grantor, and that signature is deemed to be that of the grantor. The amanuensis rule may apply when an agent, acting with merely mechanical and no discretionary authority, signs the principal’s name outside the principal’s presence.” 2A C.J.S., Agency § 257.
A. Kansas cases recognize the use of an amanuensis
Time-honored Kansas cases mention the use of an “amanuensis” without questioning the validity of ones signature for another, tacitly recognizing the amanuensis rule stated above. See State v. Uhls, 121 Kan. 587, 249 P. 597 (1926) (crediting the testimony of the defendant’s amanuensis); Filley v. Insurance Co., 93 Kan. 193, 205, 144 P. 257 (1914) (“In Goldsmith v. Union Mutual Life Ins. Co., 18 Abb. N. C. 325, 2 N. Y. St. Rep. 610, 41 Hun 641, ... it was held that the agent who acted as scrivener or amanuensis for the insured did not word the policy so as to express the intention of the latter that his wife should have the insurance of his wife at his death.); Insurance Co. v. Bank, 60 Kan. 630, 637, 57 P. 524 (1899) (“The agent, however, acted as an amanuensis for Rammelsberg in wilting down answers to the questions in the [insurance] application, and the latter had the right to presume that his statements would be set down as they were made, and was not negligent in failing to read them over.”); Treadway v. Ryan and others, 3 Kan. 437, 444 (1866) (noting calculations made by and testimony given by an amanuensis).
Other Kansas cases essentially apply the amanuensis rule, without addressing it by that title. For example, in Stanhope v. Rural Highschool District, 110 Kan. 739, 205 P. 648 (1922), a taxpayer brought an action to enjoin the district board of a rural high school from issuing bonds, claiming that some of the notices had not been personally signed by the members of the school board because one person had signed the names for others who had sanctioned the signatures. Our Supreme Court held: “It is familiar law that where a persons name is signed for him at his direction and in his presence by another, the signature becomes his own, and has precisely the same validity as if he had written it himself.” 110 Kan. at 742. This is the amanuensis rule that Harvey claims has no place in our law.
*677 Similarly, the Kansas Supreme Court upheld a will although the name of one of the subscribing witnesses had been written by another person. Schnee v. Schnee, 61 Kan. 643, 60 P. 738 (1900). There, a witness was unable to write so asked another person to sign his name. In upholding the validity of the will, our Supreme Court noted we should not give undue importance to the physical act of signing:
“Some of the courts have given what we deem to be undue importance to the physical participation in the act of signing, and have ruled that witnesses must do some manual act towards making the signature. The more satisfactory authorities, as well as reasons, sustain the view that the name of an attesting witness who is unable to write may be written by another at his request, in his presence and in the presence of the testator. As stated in Lord v. Lord, 58 N. H. 7, ‘to require a person, whose name is to be written in a testamentary transaction, to hold or to touch the pen, or to do anything which the law does not require him to do in other cases of attestation, seems to establish a distinction without a difference.’ [Citations omitted.]” 61 Kan. at 648-49.
The cases noted above demonstrate that Kansas has long recognized the amanuensis rule. As summarized in Pierce v. Dekle, 61 Fla. 390, 391-92, 54 So. 389 (1911):
“The rule is well settled both in England and in the United States that an act done by a person in the presence of another, and by his direction or with his consent, as the signing or execution of a sealed or written instrument, for example, is not regarded as the act of an agent, but is the direct act of the person by whose direction it is done.”
Accordingly, we find no error in the district courts ruling that our law recognizes the legal doctrine of amanuensis.
B. Application of the amanuensis rule does not violate Kansas public policy
Harvey next contends that the amanuensis rule violates Kansas public policy because it opens the door for people to come forward alleging oral directives made by decedents. He alleges this theory could be used both as a shield and as a sword to alter deeds of conveyance, wills, trusts, and beneficiary designations.
Harvey fails to show that recognizing the validity of a signature by an interested amanuensis would injure public interest or contravene some established interest of society.
*678 “‘Public policy forbids enforcement of an iEegal or immoral contract, but it equally insists that those contracts which are lawful and which contravene none of its rules shall be enforced, and that they shall not be set aside or held to be invalid on a suspicion of illegality. A contract is not void as against public policy unless injurious to the interests of the public or contravenes some established interest of society (17 C.J.S., Contracts, § 211d, p. 570). Illegality from the standpoint of public policy depends upon the facts and circumstances of a particular case (Stewart v. Fourth Nat’l Bank, 141 Kan. 175, 39 P.2d 918 [1935]), and it is the duty of courts to sustain the legality of contracts where possible (Foltz v. Struxness, 168 Kan. 714, 215 P.2d 133 [1950]). There is no presumption that a contract is illegal, and the burden of showing tire wrong is upon him who seeks to deny his obligation thereunder. The presumption is in favor of innocence and the taint of wrong is a matter of defense (Mosher v. Kansas Coop. Wheat Mkt. Ass’n, 136 Kan. 269, 15 P.2d 421 [1932]; Okerberg v. Crable, 185 Kan. 211, 341 P.2d 966 [1959]).”’ Frazier v. Goudschaal, 296 Kan. 730, 749, 295 P.3d 542 (2013) (quoting In re Estate of Shirk, 186 Kan. 311, 326, 350 P.2d 1 [I960]).
While signatures by other hands have not been addressed often in our caselaw, they are nonetheless addressed, as noted above. This theory has been recognized in Kansas law since 1866 without reporting the problems Harvey envisions. And if such problems emerge in the future, the legislature is free to address them by amending the relevant statutes by, for example, requiring some of the same procedural safeguards for TOD deeds that are required for wills.
We recognize the potential for abuse by an interested amanuensis. But power, motive, and opportunity to exercise undue influence do not alone authorize the inference that such influence was in fact exercised. In re Estate of Crawford, 176 Kan. 537, 542, 271 P.2d 240 (1954). We believe the potential for fraud or other self-dealing is properly addressed not by precluding the use of an amanuensis but by shifting the burden of proof to an interested amanuensis, as we address below.
III. The distnct cow~t applied the proper standard to detennine the validity of a signature by an interested amanuensis
Maureen, the amanuensis here, is also the sole beneficiaiy of the TOD deed which she signed. Because the amanuensis will directly benefit from the transfer of title, the validity of the transfer *679 may need to be examined under a heightened level of judicial scrutiny. No Kansas decision has addressed the issue of an interested amanuensis.
The district court adopted the analysis provided in Estate of Stephens, 28 Cal. 4th 665, 122 Cal. Rptr. 2d 358, 49 P.3d 1093 (2002). In that case, Austin Stephens had executed a DPOA naming his daughter attorney-in-fact. The DPOA contained general language that his daughter had the power to sell, convey, and transfer Stephens’ real property, but it did not expressly authorize her to make a gift of his property in trust or otherwise. Two years later, Stephens orally instructed his daughter to sign his name on a deed that vested title to his residence in himself and his daughter, as joint tenants. When Stephens died, his son challengéd the validity of the joint tenancy deed, seeking to have the property transferred to the estate.
Stephens held that because of the potential for fraud or self-dealing, the signing of a grantors name by an interested amanuensis must be presumed invalid. Estate of Stephens, 28 Cal. 4th at 677-78.
“The amanuensis rule is an exception to Civil Code sections 2309 and 2310 and also operates as an exception to Probate Code section 4264, subdivision (c), which prohibits attomeys-in-fact from maldng gifts of property to themselves. Because unscrupulous parties could attempt to use the amanuensis rule to sidestep the protections contained in these code sections, we hold that the signing of a grantor’s name by an interested amanuensis must be presumed invalid. In such a case, the interested amanuensis bears the burden to show that his or her signing of the grantor’s name was a mechanical act in that the grantor intended to sign the document using the instrumentality of the amanuensis.” Estate of Stephens, 28 Cal. 4th at 677-78.
Stephens then found the presumption of invalidity successfully rebutted by “overwhelming evidence” that the daughter had acted as a mere amanuensis, signing the deed at Austin’s direct request, albeit not in his immediate presence. Because her signature was a mere mechanical act and not an exercise of judgment or discretion, Austin’s oral instruction to Shirley was sufficient and the deed was valid as having been executed by him. Estate of Stephens, 28 Cal. 4th at 678.
*680 Similarly, the district court in our case held that because Maureen was an interested amanuensis, her signing of Roxie s name was presumed to be invalid. Maureen thus bore the burden to show by a preponderance of the evidence that her signing the TOD deed was merely a mechanical act. We believe that the district courts adoption of the Stephens standard and its resulting burden of proof was correct. Thus the amanuensis rule did not automatically render the TOD deed valid. Instead, the court had to examine the circumstances surrounding the execution of the TOD deed to determine whether the transaction was in fact free from fraud and undue influence.
The district court did so here, detailing at length how Maureen had met that burden. Six persons other than Roxie were present at the time Maureen signed the TOD deed, but one had died before the litigation began and one, the notary, had no memory of the event. As to the remaining four, the district court concluded:
“The Court heard the testimony of these four witnesses and found them to be educated, well-spoken, credible and lacking any hint of greed. The particulars of what occurred the date of the signing are set forth in the findings of fact. It is the Courts finding that the Respondents proved by a preponderance of the evidence that Roxie intended to sign the TOD deed and Maureen’s doing so was a mechanical act. Therefore, the presumption of invalidity of the TOD deed was overcome.”
Harvey does not challenge this finding or argue that the court should have required Maureen to prove by clear and convincing evidence that Roxie intended to sign the TOD deed and that Maureen s doing so was a mechanical act. Accordingly, we find no error in the district courts determination that Maureen signed the TOD deed as an amanuensis.
In reaching that result, the district court examined two relevant factors: Roxie s mental capacity and undue influence. It found that Harvey had the burden to prove by clear, satisfactory, and convincing evidence that Roxie lacked the necessary mental capacity to execute tire TOD deed; that conflicting evidence had been presented on that topic; that Roxie had to have only the mental capacity to understand in a reasonable manner that she was giving her real estate to Maureen upon her death; and that Harvey failed to prove by clear, satisfactory, and convincing evidence that Roxie lacked that mental capacity.
*681 Regarding undue influence, the district court found drat because of arguably “suspicious circumstances,” Maureen had the burden to prove the absence of undue influence; and that although Maureen was in a confidential and fiduciary relationship with Roxie, the evidence met that burden. We address Harvey’s challenges to the mental capacity and undue influence findings below.
IV. The district court properly found the presumption of undue influence was overcome
Harvey claims the district court applied the incorrect burden of proof in analyzing the issue of undue influence. He contends it was error to require him to prove undue influence by clear and convincing evidence while permitting respondents to rebut the presumption of undue influence by a mere preponderance of the evidence.
We first set forth our standard of review. By statute, “‘[bjurden of proof’ means the obligation of a party to meet the requirements of a rule of law that the fact be proven either by a preponderance of the evidence or by clear and convincing evidence or beyond a reasonable doubt, as the case may be. Burden of proof is synonymous with ‘burden of persuasion.’” K.S.A. 60-401(d). The assignment of the burden of proof involves a question of law subject to this courts unlimited review. In re G.M.A., 30 Kan. App. 2d 587, 593, 43 P.3d 881 (2002).
A. The district court applied the correct burden of proof
To determine whether undue influence was exerted over Roxie, the district court applied a two-prong test set forth in In re Estate of Bennett, 19 Kan. App. 2d 154, 865 P.2d 1062 (1993). The district court held:
“Under the first prong of tire Bennett test, it must be shown that the person who is alleged to have exerted the undue influence was in a confidential and fiduciary relationship with the decedent. Under the second prong, it must be shown that there were ‘suspicious circumstances’ which surrounded the making of the will. If a will contestant can show that there are suspicious circumstances by clear, satisfactory, and convincing evidence, a presumption that the undue influence was exerted on the testator will arise. The burden of proof will shift to the will proponent if a will contestant can prove that there were suspicious circumstances surrounding the making of tire will.”
*682 “Legitimate influence is not improper; that is, influence obtained by kindness and affection will not be regarded as undue.” In re Estate of Ziegelmeier, 224 Kan. 617, 622, 585 P.2d 974 (1978). The district court found that Maureen was in a confidential and fiduciary relationship with Roxie. The district court then found, by clear and convincing evidence, that suspicious circumstances surrounded the signing of the TOD deed, creating a presumption of undue influence and shifting to the respondents the burden to prove the absence of undue influence.
In Cresto v. Cresto, 302 Kan. 820, 832-34, 358 P.3d 831 (2015), our Supreme Court established the analysis in an undue influence claim, holding:
“This court has defined undue influence as ‘ “such coercion, compulsion or constraint that the testators free agency is destroyed, and by overcoming his power of resistance, file testator is obliged to adopt the will of another rather than exercise his' own.’” [Citations omitted.] In other words, tire testator becomes ‘the tutored instrument of a dominating mind, which dictates to him what he shah do, compels him to adopt its will instead of exercising his own, and by overcoming his power of resistance impels him to do what he would not have done had he been free from its control.’ [Citation omitted.]
[[Image here]]
“Therefore, a person contesting a testamentary document without direct evidence that it was the product of undue influence can nevertheless establish a presumption of undue influence by showing that (1) ‘the person who is alleged to have exerted undue influence was in a confidential and fiduciary relationship with the [person executing the testamentary document]’; and (2) ‘there were “suspicious circumstances” surrounding the making of the [testamentary document].’ [Citation omitted.]
“As noted above, after the proponent has proffered a prima facie case for validity, die burden has shifted to the contestant to show the requisite relationship and suspicious circumstances to create die presumption of undue influence. But then, upon die successful creation of die presumption of undue influence, die burden shifts back to the proponent of the testamentaiy document to rebut die presumption. [Citations omitted.]”
The standard of proof generally needed to rebut a presumption is a preponderance of the evidence, as the American Jurisprudence states:
“With regard to a typical presumption, therefore, to avoid a directed verdict as to the presumed fact, the party adversely affected by the presumption must offer sufficient evidence to permit a rational factfinder to find the nonexistence of the *683 presumed fact by a preponderance of the evidence.” 29 Am. Jur. 2d, Evidence § 216.
Harvey cites no authority for his proposition that the respondents should have borne a higher burden of proof. Absent some indication the Supreme Court is departing from its position so recently stated, we are duty bound to follow Cresto. See Farley v. Above Par Transportation, 50 Kan. App. 2d 866, 877, 334 P.3d 883 (2014), rev. denied 302 Kan. 1009 (2015). Accordingly, we find the district court properly applied the correct order and quality of proof as established in Cresto. See Belt v. Boon, No. 113,153, 2016 WL 3365769, at *4 (Kan. App. 2016) (unpublished opinion) (rejecting claim that once suspicious circumstances were shown, the burden was on the other party to disprove undue influence by clear and convincing evidence).
B. Any error is harmless
But even had Harvey shown error in not requiring respondents to rebut the presumption of undue influence by clear and convincing evidence, Harvey gives us no reason to believe that respondents may not have met that higher burden. The district court noted the following factors in finding respondents had shown the absence of undue influence:
• No evidence showed any previous legal document had made a different disposition of the homeplace (the only land transferred in the TOD deed);
• No evidence showed Roxie had ever expressed a desire for tire homeplace to go to anyone other than her grandsons (the persons who ultimately received the land transferred in the TOD deed);
• No evidence showed Maureens actions were motivated by greed;
• Evidence showed “a myriad of reasons why Roxie would choose to disinherit Harvey”;
• Evidence showed Roxie was a strong-willed woman who was not easily influenced.
Harvey does not raise any challenge to any of these findings of *684 fact, nor does lie contend the district court overlooked contrary evidence.
The record shows that if the respondents had borne the higher burden of disproving undue influence by clear and convincing evidence, the district court would have been justified in finding they had met that burden and in concluding that any influence exerted over Roxie did not amount to such coercion, compulsion, or restraint as to destroy her free agency, to overcome her power of resistance, or to cause her to adopt Maureen s will rather than exercise her own. Compare In re Estate of Domio, No. B225870, 2011 WL 6062017, at *7 (Cal. App. 2011) (unpublished opinion) (finding substantial evidence diat an interested amanuensis exerted undue influence where he kept his siblings away from the grantor by physical intimidation, called the police to have diem removed from the property if they questioned his actions, changed the lock so that they could not get into the grantors house, made decisions contrary to the grantors wishes, and refused to show the grantor the deed to her house). Thus any error relating to the burden of proof on this issue was harmless.
V. The district court correctly deteimined that Roxie had the necessary mental capacity to execute a TOD deed
Plarvey next argues the district court erred by applying an improper test of mental capacity and by placing on Harvey the burden to prove by clear' and convincing evidence that Roxie lacked capacity to execute a deed.
As previously stated, this court applies a de novo standard of review to questions pertaining to the assignment of the burden of proof. In re G.M.A., 30 Kan. App. 2d at 593. Although Harvey frames this as a burden of proof issue, Harvey ultimately complains diat the district court erred in finding Roxie had the requisite mental capacity to execute a deed.
A. The district court applied the proper legal test of mental capacity
Harvey argues that the district court erred in accepting proof *685 of testamentary capacity, rather than the higher standard of contractual capacity. Harvey contends that a TOD deed “shall not be considered a testamentary disposition,” K.S.A. 59-3507; therefore, testamentary capacity is insufficient and contractual capacity is necessary. Harvey asserts that his evidence showed Roxie was unable to transact any type of business, so she lacked capacity to contract or deed.
The district court found drat Roxie did not need to have the mental capacity to enter into a complex contract:
"As to the mental capacity to contract as previously discussed, Roxie only had to have the mental capacity to understand, in a reasonable manner, that she was giving her real estate to Maureen upon her death. She didn’t have to have the capacity to enter into a complex contract or to engage in an intricate business transaction or have absolute soundness of mind.”
We find no error in the district courts application of the same legal standard that applies in determining whether a testator is competent.
"The rale is well established in this state that one who is able to understand what property he has, and how he wants it to go at his death, is competent to make a will even though he may be feeble in mind and decrepit in body. The value of property consists largely in the right to dispose of it as the owner desires, and this power of disposal, either by deed or by will, is not to be interfered with so long as the mental capacity indicated remains. The rule is found clearly set forth in numerous decisions of ours.” Cole v. Drum, 109 Kan. 148, 159, 197 P. 1105 (1921).
See Curry v. Stewart, 189 Kan. 153, 157, 368 P.2d 297 (1962) (finding “the test of mental capacity to contract or to convey property is whether the person possesses sufficient mind to understand in a reasonable manner the nature and effect of the act in which he is engaged”; applying that test to grantors execution of a deed); In re Estate of Crawford, 176 Kan. at 541 (same). Cf. Funk v. Fish, 122 Kan. 294, 299, 252 P. 256 (1927) (finding that the grantor lacked capacity to transact ordinary business, and that “further evidence” permitted the conclusion that she was not capable of making an effective deed).
"The test of a testamentaiy capacity is not whether a person has capacity to enter into a complex contract or to engage in intricate business transactions nor is absolute soundness of mind the real test of such capacity. The established rule is that one who is able to understand what property he has, how he wants it to go *686 at his death and who are the natural objects of his bounty is competent to make a will even though he may be feeble in mind and decrepit in body.” In re Estate of Perkins, 210 Kan. 619, 626, 504 P.2d 564 (1972).
See In re Estate of Raney, 247 Kan. 359, 367, 799 P.2d 986 (1990); In re Estate of Ziegelmeier, 224 Kan. at 621.
B. The district court applied the proper burden of proof
The district court required Harvey to prove by clear, satisfactory, and convincing evidence that Roxie lacked the mental capacity to execute the TOD deed. That requirement is the same as that -applied to persons opposing a will.
‘‘[OJpponents to the will must prove lack of testamentaiy capacity by clear, satisfactory, and convincing evidence. Where a trial court’s finding as to a testators mental capacity is challenged on appeal, the appellate court is only concerned with whether there is substantial competent evidence to support the trial courts finding and does not compare or weigh the testimony. [Citation omitted.]” In re Estate of Farr, 274 Kan. 51, 64, 49 P.3d 415 (2002).
Harvey contends, it makes sense to require this higher degree of proof when challenging the capacity of a testator because a will is executed pursuant to the strict provisions and procedural protections of K.S.A. 59-606; but that higher degree of proof makes no sense for a TOD deed, which lacks those procedural protections. '
In support, Harvey cites solely Fish v. Poorman, 85 Kan. 237, 244-45, 116 P. 898 (1911), which held that the burden to establish mental incapacity of a donor of a deed was preponderance of the evidence. But that case did not apply a different degree of proof when examining the mental capacity of a testator of a will than when examining tire mental capacity of a grantor of a deed. More recent Kansas cases appear to require the same proof of mental capacity for testators and for grantors. See, e.g., Union National Bank of Wichita v. Mayberry, 216 Kan. 757, 762, 533 P.2d 1303 (1975) (citing 44 Am. Jur. 2d, Insurance § 1778, p. 692, finding “the mental capacity necessary for a valid change of beneficiary by an insured is the same ás that necessary to execute a valid will, deed or contract”).
Our caselaw applies the legal presumption that every adult is fully competent to enter into a contract until satisfactory proof to *687 the contrary is presented. See In re Estate of Hendrickson, 248 Kan. 72, 77, 805 P.2d 20 (1991). And our caselaw specifies that the quality of evidence needed to overcome the presumption of capacity for testators is clear and convincing evidence. We find no reason why we should apply a different standard in examining an intestate s mental capacity, so we apply that rule here in reviewing Roxie s capacity to execute the TOD deed.
C. Sufficient evidence shows Roxie was mentally competent
Substantial evidence is evidence which possesses both relevance and substance and which provides a substantial basis of fact from which the issues can be reasonably resolved. Wiles v. American Family Assurance Co., 302 Kan. 66, 73, 350 P.3d 1071 (2015). The critical time in determining capacity is when the deed is made and executed. All other evidence concerning the grantors mental capacity before or after the time of execution is only an aid in deciding the issue. In re Estate of Barnes, 218 Kan. 275, 281, 543 P.2d 1004 (1975). The mere fact that a person suffers from senile dementia does not mean that person lacks testamentary capacity. In re Estate of Brown, 230 Kan. 726, 730, 640 P.2d 1250 (1982). A person may be competent to make a will even though he or she is feeble in mind and decrepit in body. In re Estate of Perkins, 210 Kan. at 626.
The district court stated its refiance on the following evidence of Roxies mental capacity:
• Harvey testified that after Roxies stroke in 1991, she lacked the mental capacity to understand basic business transactions, such as signing a check; however, Harvey “never or rarely ever” went to see Roxie after August of 2003, which was 9 months before the TOD deed was executed.
• Dr. Anand Kaul, who saw Roxie in the hospital after she fell, noted that Roxie was confused, had dementia, and was not oriented to time, place, and month. But after a fall, Roxie would be in pain and on pain medication, which would add to her inability to communicate.
• Dr. Kaul opined that Roxie suffered from stage 2 or 3 dementia in 2004, with stage 3 being the highest, but he did not *688 diagnose her as having Alzheimers until 10 months after the TOD deed was executed.
• Maureen testified that Roxie did not like Dr. Kaul and would shut down when seeing him.
• Ten witnesses testified about Roxie’s ability to communicate and understand both before and after the execution of the TOD deed. The district court discounted three of them because they were parties in this proceeding but found the seven remaining witnesses “had no stake in the proceedings and all seven appeared educated, well spoken, and credible in what they testified to.”
The record shows substantial competent evidence supporting the district court’s finding that at the time Roxie signed the deed by Maureen’s hand, Roxie was competent to understand the nature of the transaction. The facts establish that Roxie knew the homeplace belonged to her, that she ultimately wanted Bart and Ryan, and not Harvey, to have that property, that she asked Maureen to have an attorney draft a TOD deed to Maureen so she could hold tire property until the grandsons were secure enough financially to hold it themselves, and that the attorney did so. We decline Harvey’s invitation to reweigh tire evidence, to reassess the credibility of the witnesses, or to disturb the district court’s negative finding, as that is not the role of this court. See In re Farr, 274 Kan. at 68; Mohr v. State Bank of Stanley, 244 Kan. 555, 567-68, 770 P.2d 466 (1989).
The facts establishing what occurred when Roxie directed Maureen to sign the TOD deed are uncontested. Maureens signature on the TOD deed was merely a mechanical act Maureen did not exercise any judgment, nor did she have any discretion to do so. Instead, Roxie directed Maureen to sign the TOD deed for her, and she did so in the presence of five other witnesses. Because Roxie had the mental capacity to deed her property and no undue influence was ultimately shown, the district court properly found Maureen’s signature as an interested amanuensis was valid.
VI. Maureens signature on the TOD deed complied with the Kansas transfer-on-death statutes
We next address Harvey’s argument that Maureen’s signature *689 on the TOD deed failed to comply with the Kansas transfer-on-death statutes. Harvey contends that a TOD deed has three requirements: signature by the record owner; acknowledgement of die record owner’s signature; and recording the deed, prior to the grantors death, in the county in which the real estate is located. We agree a valid TOD deed requires at least these three elements. See K.S.A. 59-3501; K.S.A. 59-3502. Harvey concedes the requirement of recording of the deed is met. We examine below his claims that the TOD deed was invalid because it was not signed by the record owner, Roxie, and because Roxie’s signature was not acknowledged.
These issues involve matters of statutory interpretation, which are questions of law subject to de novo review. The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. Ullery v. Othick, 304 Kan. 405, 409, 372 P.3d 1135 (2016).
A. Signature was acknowledged
We first address the “acknowledgment” requirement. Harvey contends solely that Maureen could not sign the deed “with proper authority,” as is required for a proper acknowledgement as that term is defined in the Uniform Law on Notarial Acts, K.S.A. 53-501 et seq. Harvey relies on the following definition: “[I]f the instrument is executed in a representative capacity, that the person signed the instrument with proper authority and executed it as the act of the person or entity represented and identified therein.” K.S.A. 53-502(b).
But since Maureen signed the TOD deed as an amanuensis, she did not sign it “in a representative capacity,” but as Roxie herself. Thus the above definition is inapplicable. Harvey raises no other challenge to the acknowledgement, and it is undisputed that the deed was properly notarized by a notaiy public who was present at the time Roxie instructed Maureen to sign the deed for her. See K.S.A. 53-509 (providing that an acknowledgment in an individual capacity may simply provide as follows: “This instrument was acknowledged before me ...’”).
*690 B. Deed was signed by the record owner
Harvey next contends that only Roxie, as the record owner, could sign a TOD deed.
The relevant statute confirms that a TOD deed must be signed by the record owner of the interest in real estate.
“An interest in real estate may be titled in transfer-on-death, TOD, form by re-r cording a deed signed by the record owner of such interest, designating a grantee beneficiaiy or beneficiaries of the interest. Such deed shall transfer ownership of such interest upon the death of the owner. A transfer-on-death deed need not be supported by consideration.” K.S.A. 59-3501(a).
Harvey contrasts this statute to K.S.A. 58-2205, which provides: “Conveyances of land, or of any other estate or interest therein, may be made by deed, executed by any person having authority to convey tire same, or by that person’s agent or attorney, and may be acknowledged and recorded as herein directed, without any other act or ceremony whatever.” (Emphasis added.) Read together, the statutes provide that although most deeds may be executed by a person’s agent, a TOD deed cannot—it must be. signed by the record owner of such interest.
But because the amanuensis rule applies, the record owner signature requirement is met. As an amanuensis, Maureen did not sign as Roxie s agent but as a mere scrivener for Roxie, so the signature is considered Roxie’s own. Accordingly, we find no merit to the contention the TOD deed failed to comply with statutory requirements for such deeds.
VII. We do not reach the remaining issues briefed on appeal
We find it unnecessary and improper for us to reach two issues which the parties briefed on appeal: whether Maureen’s signature was invalid for failing to comply with the Kansas Power of Attorney Act, and whether the TOD deed created a trust. Deciding these issues would result in advisory opinions. See State v. Hilton, 295 Kan. 845, 849, 286 P.3d 871 (2012) (as a general rule, Kansas appellate courts do not decide moot questions or render advisory opinions).
Harvey’s contention that Maureen’s signature was invalid because it failed to comply with requirements of the Kansas Power *691 of Attorney Act in K.S.A. 2015 Supp. 58-654(f) is not properly before this court. Harvey prevailed on that issue below, and no one appealed that ruling. Moreover, whether Maureens signature was beyond her power as an attorney-in-fact is immaterial, given our holding that her signature was valid as an amanuensis.
Harvey does not show that the two theories are mutually exclusive—that since Maureen had the'DPOA, she could sign the TOD deed only in drat capacity as an agent and not as an amanuensis. Nor does Harvey show that the two theories are correlative such that if Maureen had the power to sign a document as DPOA she necessarily lacked the power to sign the TOD deed as an amanuensis. Accordingly, we need not decide whether the district court correctly ruled that Maureen lacked express authorization under the DPOA to sign the TOD deed as Roxie s attorney-in-fact.
Similarly, we find it unnecessary and improper for us to reach Harvey’s argument that the TOD deed did not meet the statutory requirements for creating a trust. Whether a trust was created by the TOD deed has no effect on the controlling issue appealed in this case—the application of the theory of amanuensis. Therefore, we do not determine whether the requirements of K.S.A. 58a-402 were met or whether a resulting trust was created.
Affirmed.
* # #